# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIANA MARTINEZ-SANCHEZ, an individual, and EUGENIO ANTONIO-CRUZ, an individual, on behalf of themselves and all other persons similarly situated, the State of California and current and former aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHONY VINEYARDS, INC., et al.,<br><br>Defendants. | No. 1:19-cv-01404-DAD-JLT<br><br>ORDER DENYING DEFENDANT ANYTHONY VINEYARDS, INC.'S AND DEFENDANT SYCAMORE LABOR, INC.'S MOTION TO STAY PROCEEDINGS<br><br>(Doc. No. 10) |

This matter is before the court on a motion to stay filed by defendants Anthony Vineyards, Inc. and Sycamore Labor, Inc. ("defendants") on December 23, 2019. (Doc. No. 10.) Defendants' motion came before the court for hearing on January 22, 2020. Attorney Kaleb Judy appeared telephonically on behalf of defendants, and attorneys Eric Trabucco and Dawson Morton appeared telephonically on behalf of plaintiffs and the putative class. The motion was taken under submission following oral argument. For the reasons set forth below, the motion to stay will be denied.

/////

/////

1

**BACKGROUND**

On October 4, 2019, plaintiffs Sebastiana Martinez-Sanchez and Eugenio Antonio-Cruz ("plaintiffs") filed this putative class action against defendants. (Doc. No. 1.) On December 12, 2019, plaintiffs filed a first amended complaint ("FAC") to clarify some of their factual allegations and to add Garza Contracting Inc. as a named defendant.[1] (Doc. No. 6.) Defendants Anthony Vineyards, Inc. and Sycamore Labor, Inc. ("defendants") timely answered the FAC on December 23, 2019. (Doc. No. 7.)

Plaintiffs and the putative class are non-exempt agricultural employees who performed field and vineyard work in the production of table grapes at defendant Anthony Vineyards in California. (Doc. No. 6 at ¶ 1.) Plaintiffs assert the following ten causes of action in their FAC: (1) Violation of the Agricultural and Migrant Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq.*; (2) Failure to Pay Minimum Wages, Cal. Lab. Code §§ 1194, 1194.2, 1197 & Wage Orders; (3) Failure to Provide Meal Periods or Pay Premium Wages in Lieu Thereof, Cal. Lab. Code §§ 226.7, 512 & Wage Orders; (4) Failure to Provide Rest Breaks or Pay Premium Wages in Lieu Thereof, Cal. Lab. Code §§ 226.2, 226.7, 1198 & Wage Orders; (5) Failure to Reimburse Business Expenses, Cal. Lab. Code § 2802; (6) Failure to Furnish Accurate Itemized Wage Statements, Cal. Lab. Code §§ 226, 226.2 & Wage Orders; (7) Failure to Permit Inspection or Copying of Records, Cal. Lab. Code §§ 226 & 1198.5; (8) Failure to Timely Pay Final Wages at Resignation or Termination, Cal. Lab. Code §§ 201-203 & Wage Orders; (9) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (10) Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq*. (Doc. No. 6.)

Before plaintiffs filed the present action, a different employee of defendants brought a similar putative class action lawsuit against defendants in the Riverside County Superior Court, *Jose Luis Villanueva Ceja v. Anthony Vineyards, Inc., et al.*, Case No. RIC1901905 ("the

---

[1] Garza Contracting, Inc. has not yet answered the FAC or otherwise appeared in this action. Plaintiffs have not filed a proof of service or an executed waiver of service with respect to Garza Contracting, Inc. In support of defendants' motion to stay, defendants' counsel T. Scott Belden declared that Garza [Contracting,] Inc. "does not exist anymore because it went bankrupt . . ." (Doc. No. 12 at ¶ 4, n. 1.) In any event, Garza Contracting, Inc. is not a movant in the present motion to stay.

*Villanueva* action"). Defendants' counsel is representing the defendants in both actions and has declared that the parties in the *Villanueva* action are engaged in discovery and have carried out the *Belaire West* notice process. (Doc. No. 12 at ¶ 8.) The complaint in the *Villanueva* action was filed on March 15, 2019 and asserted the following nine causes of action: (1) Failure to pay wages for all time worked at minimum wage, Labor Code §§ 1194 and 1197; (2) Failure to pay proper overtime wages, Labor Code §§ 510, 1194, and 1198; (3) Failure to authorize or permit meal periods, Labor Code §§ 521 and 226.7; (4) Failure to authorize or permit rest periods, Labor Code § 226.7; (5) Failure to provide drinking water, Labor Code § 2441; (6) Failure to indemnify employees for required expenditures, Labor Code § 2802; (7) Failure to provide complete and accurate wage statements, Labor Code § 226; (8) Failure to timely pay all earned wages and final paychecks due a time of separation of employment, Labor Code §§ 201, 202, and 203; (9) Unfair business practices, Bus. & Prof. Code §§ 17200 *et seq*. (Doc. No. 14 at 42–43.)

Seven of the nine causes of action asserted in the *Villanueva* action are also brought by plaintiffs in the present federal action.[2] But unlike the *Villanueva* action, in which violations of only California law are alleged, plaintiffs in this action have asserted that defendants violated a federal law, AWPA. Plaintiffs here have also asserted a PAGA claim, a claim not brought in the *Villanueva* action. The class definition in the *Villanueva* action—"all current and former non-exempt employees employed by Defendants in California at any time within the four years prior to [March 15, 2019] and through the date notice is mailed to a certified class" (Doc. No. 14 at 52–54)—encompasses the proposed class as defined in the present action:

> All non-exempt agricultural employees who performed field or vineyard work in the production of table grapes—including, but not limited to, tasks such as weeding, pruning, de-leafing, tipping, harvesting, picking, and packing—at Anthony Vineyards in California during the period four (4) years prior to [October 4, 2019] through the date of this action's final disposition.

(Doc. No. 6 at ¶ 79.)

/////

---

[2] Plaintiffs in the action before this court do not assert claims for failure to pay overtime wages or failure to provide drinking water.

3

On December 23, 2019, defendants filed the present motion to stay this federal action pending the resolution of the *Villanueva* action under the *Colorado River* abstention doctrine. (Doc. No. 10.) On January 8, 2020, plaintiffs filed their opposition to defendants' motion to stay. (Doc. No. 19.) On January 15, 2020, defendants filed their reply to plaintiffs' opposition. (Doc. No. 21.)

**LEGAL STANDARD**

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017). Given that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," staying proceedings due to the existence of a similar state court action is appropriate "'only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, at 817–18 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)); *see also Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) (Circumstances warranting a stay under the *Colorado River* doctrine are "exceedingly rare."); *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) ("the *Colorado River* doctrine is a narrow exception"). "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction . . . .'" *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)); *see also Seneca Ins.*, 862 F.3d at 841.

Nonetheless, "[f]ederal courts are authorized to dismiss or stay an action 'due to the presence of a concurrent state proceeding for reasons of wise judicial administration.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colorado River*, 424 U.S. at 818). In considering whether to do so, the court's "task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the *surrender* of [federal] jurisdiction." *Id.* at 25–26 (emphasis in original); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir. 1993) ("Only exceptional circumstances justify

/////

4

such a stay, and whether these circumstances exist is determined by weighing a complex of factors.").

In the Ninth Circuit, eight factors are to be considered in determining the appropriateness of a dismissal or stay under *Colorado River*:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011) (citing *Holder*, 305 F.3d at 870).³ "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" *Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19.

As noted in the eighth factor above, "[i]n this Circuit, the narrow *Colorado River* doctrine requires that the pending state court proceeding resolve all issues in the federal suit." *Holder*, 305 F.3d at 859; *see also Seneca Ins.*, 862 F.3d at 842. Indeed, if "there exists a substantial doubt as to whether the state court proceeding will resolve all of the disputed issues in [the federal] case, it is unnecessary for [the court] to weigh the other factors included in the *Colorado River* analysis."

---

³ In determining whether to stay proceedings under the *Colorado River* doctrine, courts also consider the degree to which the state and federal actions are "'substantially similar.'" *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368, 1372 (9th Cir. 1990) (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (finding that "[i]t is enough if the two proceedings [be] 'substantially similar'" and that "exact parallelism . . . is not required")). Thus, it has been concluded that "application of the *Colorado River* doctrine does not require an exact duplication of the parties involved or the claims asserted." *AGCS Marine Ins. Co. v. Am. Truck & Trailer Body Co.*, No. 2:12-cv-01044-KJM-JFM, 2013 WL 211196, at *5 (E.D. Cal. Jan. 9, 2013) (quoting *Sabbag v. Cinnamon*, No. 5:10-cv-02735-JF-HRL, 2010 WL 8470477, at *5 (N.D. Cal. Dec. 10, 2010)).

*Intel Corp.*, 12 F.3d at 913 n.7. In this regard, the Ninth Circuit has explained:

> Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceeding will resolve the federal action precludes the granting of a stay. . . . "When a district court decides to . . . stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. . . . Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."

*Id.* at 913; *see also Smith*, 418 F.3d at 1033. On the other hand, courts should be "particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989).

## ANALYSIS

### A. Requests for Judicial Notice

Defendants request that the court take judicial notice of the class action complaint filed in the *Villanueva* action. (Doc. No. 13.) Pursuant to the Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may therefore take judicial notice of documents filed in related state court actions. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *see also U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of proceedings in other courts where those proceedings have a "direct relation to matters at issue"). Accordingly, the court grants defendants' request for judicial notice, but only for the purposes of noticing the existence of the *Villanueva* action and the causes of action presented there.

/////

| | |
|---|---|
| 1 | Plaintiffs request the court take judicial notice of facts contained in certain public records, |
| 2 | including public agency documents and filings. (Doc. No. 20.) Specifically, plaintiffs request |
| 3 | that the court take judicial notice of administrative records and public filings filed with the |
| 4 | California Secretary of State, including defendants' corporate filings, and a public record from the |
| 5 | California Department of Industrial Relations' Private Attorney General Act (PAGA) Case |
| 6 | Search. (*Id*. at 2–4.) Public records are properly the subject of judicial notice because the |
| 7 | contents of such documents contain facts that are not subject to reasonable dispute, and the facts |
| 8 | therein "can be accurately and readily determined from sources whose accuracy cannot |
| 9 | reasonably be questioned." Fed. R. Evid. 201(b); *see also Intri-Plex Techs. v. Crest Grp., Inc.*, |
| 10 | 499 F.3d 1048, 1052 (9th Cir. 2007). The exhibits offered by plaintiffs are matters of public |
| 11 | record, made available on the websites of a governmental entity, and are properly subject to |
| 12 | judicial notice. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), |
| 13 | *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n. v. Solimino*, 501 U.S. 104 (1991); |
| 14 | *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Moreover, the accuracy of the source |
| 15 | of the records—the websites of the California Secretary of State and the California Department of |
| 16 | Industrial Relations—cannot reasonably be questioned. Fed. R. Evid. 201(b). Accordingly, |
| 17 | plaintiffs' request for judicial notice is granted. |
| 18 | **B.** **Whether this Court Should Abstain under *Colorado River*** |
| 19 | As explained in more detail below, the court concludes that there is substantial doubt as to |
| 20 | whether the state proceedings in the *Villanueva* action will resolve all the issues presented in this |
| 21 | federal action. First, the plaintiffs in the *Villanueva* action did not allege violations of the AWPA. |
| 22 | Second, the plaintiffs in the *Villanueva* action did not assert PAGA claims, which have distinct |
| 23 | remedies and procedural limitations. Third, the plaintiffs in this action have presented a "client |
| 24 | employer" theory of liability under California Labor Code § 2810.3, which has not been raised in |
| 25 | the *Villanueva* action. |
| 26 | 1. Plaintiffs' Federal AWPA Claim |
| 27 | The federal Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") was |
| 28 | passed by Congress for the stated purpose, in part, of "assur[ing] necessary protections for |

migrant and seasonal agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801. The AWPA authorizes statutory damages and provides for a private right of action, stating that any person aggrieved by a violation of the AWPA "may file suit in any district court of the United States . . .." 29 U.S.C. § 1854.[4]

Plaintiffs allege defendants violated the AWPA by: (i) providing false and misleading information regarding the terms and conditions of employment, (i) violating the terms of the working arrangement, (iii) failing to pay wages, and (iv) failing to provide workers with accurate, itemized written statements. (Doc. No. 6 at 19.) Defendants argue that plaintiffs' AWPA claims are "purely derivative of the Labor Code claims already at issue in the state court action," and cannot point to any significant factual disputes that would remain unresolved by the *Villanueva* action (Doc. No. 21 at 2–3). Defendants assert that a stay is appropriate because the factual issues would be resolved in the *Villanueva* action. (Doc. No. 21 at 3.) As noted above, however, courts addressing motions to stay under *Colorado River* evaluate whether there is a substantial doubt that the state court proceedings will "resolve all issues," not just *factual* issues. While many of the disputed factual issues in the two actions overlap and may be resolved in the *Villanueva* action, defendants concede that "some discrete remedies presented [here] might be unresolved by the resolution of [the *Villanueva* action]." (Doc. No. 21 at 3.) Moreover, at the January 22, 2020 hearing on the pending motion, defendants' counsel conceded that the legal issues posed by plaintiffs' AWPA claim will not be resolved by the *Villanueva* action.

The court finds that substantial doubt exists as to whether the *Villanueva* action can resolve plaintiffs' federal AWPA claim, which weighs against granting a stay of this action.

---

[4] The statute does not expressly preclude a state court from enforcing rights created under the AWPA or otherwise establish that federal courts have exclusive jurisdiction over AWPA claims. But plaintiffs assert that Congress intended to provide migrant workers with a federal forum for their AWPA claims and forcing those workers to litigate their AWPA claims in state court based on abstention principles would contravene Congress's intent. (Doc. No. 19 at 8.) Defendants do not address this argument in their opposition. The court agrees that AWPA does not explicitly preclude aggrieved parties from selecting state court forums to resolve their AWPA claims, but that issue is not relevant here because the plaintiffs in the *Villanueva* action did not bring claims under AWPA. Moreover, at the January 22, 2020 hearing, plaintiffs' counsel clarified that they do not take the position that federal courts have exclusive jurisdiction over AWPA claims.

### 2. Plaintiffs' PAGA Claim

The *Villanueva* action does not include any claims for penalties under PAGA. Defendants argue that the PAGA claims before this court are completely derivative of the California Labor Code claims in the *Villanueva* action. (Doc. No. 21 at 3) (quoting *Amiri v. Cox Commc'ns Cal., LLC*, 272 F. Supp. 3d 1187, 1193 (C.D. Cal. 2017) ("Recovery under PAGA is predicated on Plaintiff first establishing Defendant violated the Labor Code.")). An overview of PAGA, however, is instructive and suggests that the PAGA claims before the court in this action are distinct from any claims pending before the state court in the *Villanueva* action.

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a). A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 985-86 (2009) (PAGA does not require plaintiffs to meet state class-certification requirements under California Code of Civil Procedure § 382). A judgment in a PAGA action therefore "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*; *see also Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party.").

The PAGA statute also imposes a number of limitations on litigants. First, because a PAGA action by an aggrieved employee functions as a "substitute" for one brought by the state government itself, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages available through direct or class action claims. *Id.* at 986. Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the Labor & Workforce Development Agency ("LWDA") as well as to the employer. Cal. Lab. Code § 2699.3(a)(1); *Arias*, 46 Cal. 4th at 986. Third, any civil penalties recovered must be distributed as follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved employees. Cal.

Lab. Code § 2699(i); *Arias*, 46 Cal. 4th at 986. Finally, a trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).

Given these remedies as well as procedural limitations accompanying the PAGA claims, this court finds substantial doubt as to whether the state case will resolve all of the issues presented in this federal action. *See Tan v. Grubhub, Inc.*, 171 F. Supp. 3d 998, 1015 (N.D. Cal. 2016) (denying stay when federal action required resolution of labor law violations not addressed in the state action complaint and although the state court could have resolved plaintiff's PAGA claims in their entirety the state action could not resolve all the issues before the federal court); *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 815 (N.D. Cal. 2015) ("Given the fact of the broader remedies sought herein and the fact that certain of Plaintiffs' claims that are not based directly on Proposition 65, the Court concludes that there is substantial doubt that the state proceedings will resolve the federal action; this precludes a *Colorado River* stay.").

Accordingly, the court finds that substantial doubt exists here as to whether the *Villanueva* action can resolve plaintiffs' PAGA claim, which weighs against granting a stay of this action.

### 3. Plaintiffs' "Client Employer" Theory of Liability

The plaintiffs in the *Villanueva* action did not raise the "client employer" theory of liability under California Labor Code § 2810.3 that plaintiffs have raised in this federal action. California Labor Code Section 2810.3 states in relevant part "[a] client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for . . . the payment of wages." Cal. Lab. Code § 2810.3(b). "Client employer" is defined as "a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor." Cal. Lab. Code § 2810.3(a)(1)(A). There is limited authority on the "client employer" theory of liability under this statute. *See Bravo v. On Delivery Servs., LLC*, No. 18-CV-01913-EMC, 2019 WL 493809, at *2 n.1 (N.D. Cal. Feb. 8, 2019) (noting limited authority exists and that "'joint employer' under California law is more expansive than that under federal law and that California law has a 'client employer' theory that does not appear to be available under federal law").

/////

10

Plaintiffs contend that their theory of liability involves additional elements of proof that differ from the joint-employer theory of liability asserted in the *Villanueva* action. (Doc. No. 19 at 8.) Defendants assert that because plaintiffs allege civil liability is shared by the defendants and the defendants do not dispute that defendant Anthony Vineyards is a client of defendant Sycamore, that the *Villanueva* action would dispose of this issue. (Doc. No. 21 at 3.) But, whether defendant Anthony Vineyards "operated as a client employer" is not at issue in the *Villanueva* action, and thus this court is not convinced that issue would be resolved in those proceedings, which also weighs against granting a stay.

### 4. The Remaining *Colorado River* Factors

Because the court doubts that the *Villanueva* action "will resolve all of the disputed issues" in this federal action, "it is unnecessary for [the court] to weigh the other factors included in the *Colorado River* analysis." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir. 1993). Nevertheless, consideration of the other recognized factors also does not weigh in favor of granting the requested stay. Neither this court nor the state court has assumed jurisdiction over property. State law provides the rule of decision on the merits for the state law claims, but not the federal AWPA claim. It is true that jurisdiction was first obtained in state court. However, there has been no showing that this federal forum is inconvenient for the parties or that the exercising of jurisdiction by this court would promote forum shopping.[5] As noted, because not all the issues in the two actions are the same, there exists a legitimate concern whether the state court proceedings are adequate to protect the rights of the litigants in this action. Finally, while avoiding piecemeal litigation is certainly a desirable goal, there has been no compelling showing that it will not be achieved if this court proceeds in this action.

Relying upon the decision *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1174 (C.D. Cal. 2008), defendants argue that the *Colorado River* doctrine authorizes courts to issue partial stays. Defendants are correct that "[d]istrict courts in the Ninth Circuit have

---

[5] Indeed, the court notes that the plaintiffs in this federal action submitted their PAGA Notice of Claims to defendants and the State of California on March 5, 2019, ten days before the *Villanueva* action was filed. (Doc. No. 19 at 10, n.5.)

repeatedly found partial [*Colorado River*] stays permissible [ ] where some, but not all, of a federal plaintiff's claims are pending in a parallel state action." *ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1146 (C.D. Cal. 2014). But, the circumstances in *In re Countrywide*, which led that court to determine that a partial stay was warranted under the *Colorado River* factors, are not present here. There, the court concluded:

> On balance, the realities of these cases present the requisite "exceptional circumstances" to merit a *Colorado River* stay in favor of the Delaware Chancery Court action. The Court agrees with Defendants that a stay would "divide the litigation neatly and without overlap" because this Court would address pre-merger derivative claims, which stem in part from federal law, while the Delaware Chancery Court would address the merger-related class claims, which arise under Delaware law.

*In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1174 (C.D. Cal. 2008). Defendants do not address how a partial stay of only the duplicative Labor Code claims would be the kind of neat division of litigation without overlap that the court ordered *In re Countrywide*. Indeed, when pressed on this question at the January 22, 2020 hearing, in the court's view defendants' counsel failed to present persuasive reasons supporting a partial stay of this action.

In short, after considering all of the relevant factors, this court is not persuaded that exceptional circumstances and the clearest of justifications have been established justifying the granting of a stay.

**CONCLUSION**

For the reasons stated above, defendants' motion to stay (Doc. No. 10) is denied.

IT IS SO ORDERED.

Dated: **January 29, 2020**

  *Dale A. Drozd*
UNITED STATES DISTRICT JUDGE