UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIANA MARTINEZ-SANCHEZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ANTHONY VINEYARDS, INC., et al.,<br><br>　　　　　Defendants. | Case No.: 1:19-cv-01404-DAD-JLT<br><br>ORDER GRANTING MOTION TO MODIFY SCHEDULING ORDER<br><br>(Doc. 38) |

Plaintiffs filed a motion to modify the scheduling order on November 20, 2020. (Doc. 38.) Defendants filed an opposition on December 4, 2020 (Doc. 39), and Plaintiffs filed a reply on December 11, 2020 (Doc. 42). For the following reasons, Plaintiffs' motion is GRANTED.

**I.　　Factual Allegations and Background**

Plaintiffs Sebastiana Martinez-Sanchez and Eugenio Antonio-Cruz are agricultural workers who have spent many years employed by Sycamore Labor, Inc. engaged in the production of table grapes for Anthony Vineyards, Inc. (Doc. 6 at 4-5.) Plaintiffs, and the class of workers they seek to represent, were engaged in tasks such as weeding, pruning, de-leafing, tipping, harvesting, picking, and packing, and Plaintiffs allege they experienced numerous labor violations. (Id. at 2.)

Plaintiffs report that based on these violations, on March 5, 2019, Plaintiffs submitted a notice of claims to Defendants and the State of California pursuant to California's Private Attorney General Act, California Labor Code sections 2698 *et seq.* (See Doc. 20.) Then on October 4, 2019, Plaintiffs

filed this putative class action in this Court. (Doc. 1.) The complaint was amended to clarify some of their factual allegations and added Defendant Garza Contracting, Inc. as a named defendant. (Doc. 6.) On December 23, 2019, Defendants filed their answer to Plaintiffs' complaint (Doc. 7), as well a motion to stay this action (Doc. 10.)

On December 23, 2019, the parties filed a joint scheduling report proposing November 30, 2020 as the non-expert discovery cutoff. (Doc. 16.) At the time, the scheduling conference was set to take place on December 30, 2019; however, the conference was continued to February 19, 2020 due to the then-pending motion to stay. (Doc. 18.) On January 29, 2020, the Court denied Defendants' motion to stay (Doc. 25), and on February 21, 2020, the Court issued the scheduling order (Doc. 30).

Shortly after the Court denied Defendants' motion to stay, Plaintiffs served a first set of requests for production and first set of interrogatories on February 11, 2020. (Doc. 38-2, Trabucco Decl. at ¶ 7.) Defendants responded to this discovery on March 27, 2020. (Id.) Plaintiff then served a second set of interrogatories and requests for documents on or about April 28, 2020, and Defendants responded on June 1, 2020. (Id. at ¶ 13.) Plaintiffs subsequently served a third set of requests for production and a first set of requests for admission on or about October 22, 2020, and served a fourth set of requests for production, third set of interrogatories, and second set of requests for admission on or about October 28, 2020, responses to which are still pending. (Id.)

Plaintiffs report that during the course of discovery, after confirming the databases and software used by Defendants for purposes of payroll, timekeeping, and farm management, Plaintiffs met and conferred with Defendants to identify the ESI that might be available, and Plaintiffs came up with the idea to seek direct access to Defendants' databases rather than production of certain data and reports. (Trabucco Decl., ¶ 8.) Plaintiffs have negotiated and obtained direct access to databases used by Defendants for timekeeping, payroll, and farm management purposes. (Id. at ¶¶ 9, 14, 16.) On or about August 28, 2020, Defendants provided electronic access to their Famous payroll database and on October 30, 2020, they provided direct access to their Pet Tiger database used for timekeeping and other field operations. (Id. at ¶ 16.) The parties negotiated access to these databases, including the scope of access, the terms on which access would be provided, and certain safeguards relating to Defendants' interests as well as work product protections of Plaintiffs' counsel. (Id. at ¶ 14.) Plaintiffs

2

report that the negotiations to gain access were lengthy and protracted and took place over the course of several months. (Id.)

On July 2, 2020, the parties filed a joint status report. (Doc. 32.) According to Plaintiffs, they requested a status conference to assist the parties in resolving certain differences and assisting the parties to reach an agreement for database access. (Trabucco Decl., ¶ 15.) On July 6, 2020, the Court declined the request to set a status conference. (Doc. 33.)

On or about August 21, 2020, the parties reached agreement on stipulations to provide database access and enter into a protective order and filed them with the Court. (Docs. 34, 35.) Once the stipulated protective order was entered, Defendants granted Plaintiffs access to the Famous database on August 28, 2020 by providing username and password information. (Trabucco Decl., ¶ 16.) Plaintiffs report that they began reviewing data and extracting information, including a class list showing more than 10,000 class members, and payroll information of class members. (Id. at ¶ 17.) Plaintiffs report that access to the Pet Tiger database was delayed due to technical difficulties that Defendants encountered in setting up remote access for Plaintiffs. (Id. at ¶ 16.) Plaintiffs did not receive access to this database until around October 30, 2020. (Id.)

According to Plaintiffs, after gaining access to these databases used by Defendants to manage field operations and maintain timekeeping and payroll data of class members, Plaintiffs have been able to conduct depositions on class certification issues that Plaintiffs completed on November 19 and 20, 2020. (Trabucco Decl., ¶ 18; Doc. 38-1 at 5.) Plaintiffs also anticipate receiving responses to written discovery before the present non-expert discovery cutoff. (Doc. 38-1 at 5.) Plaintiffs report that while Plaintiffs' counsel has worked to produce the named Plaintiffs for deposition, one deposition has been delayed due to medical procedures undergone by one of the named Plaintiffs. (Trabucco Decl., ¶ 18.) According to Plaintiffs, due to his present medical condition, Plaintiff Eugenio Cruz will not be able to appear for deposition within the cutoff but will do so as soon as his health permits, likely in late December 2020 depending on recommendations of doctors. (Id.; Doc. 38-1 at 5.)

According to Plaintiffs, the recent depositions have revealed certain omissions in the database modules or data sets to which Plaintiffs have been given access, and missing documents, ESI, and things that should have been produced but have not. (Trabucco Decl., ¶ 19.) Plaintiffs report that this

includes operating agreement(s) between Anthony Vineyards, Inc. and Sycamore Labor, Inc.; disclosures provided to employees regarding compensation and wage rates that constitute the working arrangement and offer of employment; time stamps relating to class member work time and timekeeping practices; records relating to the transport of product in the fields and which relate to the time that class members start and end work, including potentially showing unpaid time; schedules created by farm and field management personnel; class member work schedules and the time for which workers are paid, as well as worktime that is unrecorded and unpaid; crop inventory and tracking data that contains timestamp information related to when class members are working or may be working without compensation; accounts payable data from the databases relating to purchases of tools used by class members, or the absence thereof; written communications between directors, officers, managers and supervisors using company electronic mail accounts; text communications between directors, officers, managers and supervisors using company cell phones; and training logs and attendance sheets for training conducted of Sycamore managers and supervisors. (Id.)

Plaintiffs report that gaining access to the data has permitted Plaintiffs to streamline class certification discovery by allowing them to obtain efficient access to ESI on the one hand and, on the other, allowing them to sample paper records, which Plaintiffs believe is sufficient for class certification purposes, though not necessarily for trial. (Trabucco Decl., ¶ 19; Doc. 38-1 at 6.) Plaintiffs report that this allows the parties to avoid the burden and expense of scanning a massive amount of paper records at this stage of the litigation. (Doc. 38-1 at 6.) The process of scanning, coding, and summarizing all available records of more than 10,000 class members is both burdensome and expensive and, Plaintiffs believe, unnecessary at this pre-certification stage—especially in light of the challenges posed by the pandemic for any task that involves people working together and exchanging things. (Id.) For this reason, Plaintiffs explain that they have opted to scan subsets of the records or samples for class certification purposes, anticipating however that they will have to scan and summarize a broader set of records for trial, including, for example, records containing certain categories of information not contained in the databases, such as Crew Cost Sheets/Dailies with certain data points not contained in the ESI or incomplete in the ESI, such as start and end of work periods, meal periods and rest breaks. (Id.) Plaintiffs state that, nevertheless, the scope of

scanning/coding/summarizing of records needed for trial will depend on the scope of the class and subclasses certified, or whether this case proceeds only as a PAGA case. (Id.) Plaintiffs report that they cannot anticipate at this time precisely what will have to be scanned and summarized except they anticipate with substantial certainty that there will be sets of records that will have to be scanned and summarized for dispositive motions and trial, but to undertake this burdensome and expensive project at this time is, in Plaintiffs' estimation, not the best use of resources. (Id.)

The Court has not previously modified the schedule in this case. (Trabucco Decl., ¶ 24.) The parties submitted a stipulation to extend the non-expert discovery cutoff, which the Court denied. (Docs. 36, 37.) According to Plaintiffs, on November 16, 2020, Plaintiffs sought to modify the schedule by stipulation. (Trabucco Decl., ¶ 24.) However, on November 17, 2020, Defendants declined to stipulate. (Id.)  Plaintiffs filed the instant motion to modify the scheduling order on November 20, 2020. (Doc. 38.) Defendants filed an opposition on December 4, 2020 (Doc. 39), and Plaintiffs filed a reply on December 11, 2020 (Doc. 42).

## II.     Legal Standard

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a

5

> grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III. Discussion and Analysis

Plaintiffs contend that there is good cause for modifying the schedule. (Doc. 38-1 at 8.) Plaintiffs report that they have been diligent in assisting the Court to fashion a workable scheduling order, have brought potential noncompliance not anticipated at the time the order was entered to the Court's attention, and have timely requested a modification of the scheduling order. (Id.) Plaintiffs assert that at the time the parties submitted a scheduling report and proposed case deadlines, plaintiffs were unaware that the case would involve a potential class of more than 10,000 farmworkers. (Id. at 9.) Plaintiffs report that they have streamlined discovery of extensive ESI by obtaining direct access to data. (Id.)

Plaintiffs also assert that they have acted diligently in pursuing discovery and meeting case deadlines. (Doc. 38-1 at 9.) However, Plaintiffs allege, the original scheduling conference statement was submitted prior to the development of a global pandemic that has slowed discovery and litigation generally. (Id.) According to Plaintiffs, when they drafted the scheduling conference statement, they did not anticipate how many thousands of workers were in the class. (Id. at 9-10.) Plaintiffs also state that they also could not anticipate that about nine months of discovery would end up being inadequate, and they did not anticipate that a pandemic would slow litigation. (Id. at 10.) Plaintiffs report that

despite the pandemic, Plaintiffs initiated written discovery and have since propounded several sets of written discovery to obtain information for certification. (Id.)

The parties negotiated access to Defendants' databases, and Plaintiffs report that they have obtained key discovery for class certification. (Doc. 38-1 at 10.) Plaintiffs report that Defendants provided electronic access to their Famous payroll database on August 28, 2020, and their Pet Tiger database used for timekeeping and other field operations on October 30, 2020. (Id.) Plaintiffs report that Defendants had difficulties setting up the Pet Tiger database to provide access to Plaintiffs and this delay could not have been anticipated. (Id.) Defendants contend that the delay in access to the Pet Tiger system was not unanticipatable or outside Plaintiffs' counsel's control; although Plaintiff's counsel knew of Pet Tiger's existence, they did not begin to seriously ask for remote access to it until the Court issued its September 17 order denying the stipulation to modify the scheduling order. (Doc. 39 at 3.) Defendants report that it took slightly over a month after that to agree on the scope of access and for Defendants to build and test the access. (Id.)

In reply, Plaintiffs dispute Defendants' timelines of events. (Doc. 42 at 5.) Plaintiffs describe that they sought access to the Famous and Pet Tiger databases when they served their first set of discovery requests on February 11, 2020. (Id.) According to Plaintiffs, they followed up this effort by seeking remote access to the database following Defendants' initial discovery responses and limited, single-week for a single crew, document production. (Id.) On April 23, 2020, Plaintiffs report that they sent defense counsel a draft stipulation for the remote access of Defendants' Famous and Pet Tiger databases. (Id.) Plaintiffs contend that the real reason for the delay is that Defendants held up the finalization of that stipulation and the Stipulated Protective Order for several months, until August 21, 2020. (Id.) Plaintiffs report that after the proposed protective order was entered and signed by the Court, Defendants reported encountering technological difficulties and obstacles in setting up the remote access. (Id.)

Plaintiffs report that after gaining access to two of the key databases used by Defendants, Plaintiffs have been able to conduct depositions on class certification issues that Plaintiffs completed on November 19 and 20, 2020. (Doc. 38-1 at 10.) Plaintiffs also report that they anticipate receiving responses to requests for admissions, a fourth set of requests for production, and further interrogatories

before the present cutoff. (Id.) In response to the Plaintiffs' allegation that the recent depositions have revealed certain omissions that should have been produced, Defendants allege that they have produced policy documents, samples of paper records, and documents related to Plaintiffs in April. (Doc. 39 at 3-4.) Defendants also allege that they produced a sampling of paper time records in October, one week after Plaintiffs' counsel notified Defendants what pay periods they wanted to copy, and the parties' August 2020 agreement specified which Famous modules Plaintiffs' counsel would be given access to. (Id. at 4.) Plaintiffs maintain that they scheduled depositions after the data was produced, but those depositions of Defendants Anthony Vineyards and Sycamore Labor revealed that the data production, and discovery responses generally, were significantly incomplete. (Doc. 42 at 5-6.)

Plaintiffs report that Plaintiffs' counsel has also worked to produce the named plaintiffs for deposition, but these depositions have been delayed due to medical procedures undergone by one of the named Plaintiffs. (Doc. 38-1 at 10.) According to Plaintiffs, due to his present medical condition, Plaintiff Eugenio Cruz will not be able to appear for deposition within the cutoff but will do so as soon as his health permits, likely in December 2020 depending on recommendations of doctors. (Id. at 10-11.)

Plaintiffs report that this case relies heavily on records and electronic data. (Doc. 38-1 at 11.) According to Plaintiffs, the electronic data has been produced in the form of ongoing access to Plaintiffs. (Id.) Plaintiffs report that they have engaged an expert who will analyze data for certification and trial. (Id.) According to Plaintiffs, Defendants have also made available voluminous paper records involving class members. (Id.) Plaintiffs believe that scanning only a sample of the available paper records is sufficient for class certification; however, Plaintiffs anticipate that they will likely need to scan, code, and summarize a large set of paper records for trial. (Id.) Plaintiffs believe that having the ability to obtain paper records for scanning outside of the cutoff is necessary, and that doing so will not affect other deadlines. (Id.) Plaintiffs state that they also need additional time to permit the production and scanning of certain food safety/crew documents, as well as to conduct limited follow up depositions of Defendants and party-affiliated witnesses on class certification issues, including food safety procedures and practices as they affect fieldworkers, and field data that may include time stamps. (Id.)

Additionally, Plaintiffs also anticipate that post-certification discovery will be necessary to scan and summarize paper records. (Doc. 38-1 at 11.) Plaintiffs assert that the size and scope of the records that Plaintiffs anticipate needing after class certification depend on the scope of the case following the Court's ruling on certification. (Id.)

In response, Defendants argue that Plaintiffs' counsel has not established diligence or good cause to modify the scheduling order. (Doc. 39 at 2.) Defendants also contend that they have already produced the policies, witnesses, time records, and payroll records Plaintiffs' counsel sought in discovery. (Id. at 2-3.) Defendants argue that Plaintiffs' counsel has not identified any pressing need for the additional discovery they want, and have not established why this discovery could not have been completed before the deadline. (Id.) Defendants argue that Plaintiffs' counsel's desire to conduct additional discovery regarding food safety and field data that may include time-stamps does not establish good cause. (Id. at 3.)

Plaintiffs, in reply, argue that its discovery plans have been stymied by Defendants' delay and withholding of key categories of information. (Doc. 42 at 3-7.) Plaintiffs allege that they could not have anticipated that Defendants would delay months in producing their data and make incomplete productions when they did. (Id. at 7.) Plaintiffs further allege that COVID-19 has precluded in-person review of documents and in-person site inspections and investigations, and has complicated such things as scanning and taking depositions and added additional delay to the productions and discovery at issue here. (Id. at 9.)

Plaintiffs report that despite the pandemic, Plaintiffs initiated written discovery and have since propounded several sets of written discovery to obtain information for certification. (Doc. 38-1 at 10.) Plaintiffs report that Defendants provided electronic access to their Famous payroll database and their Pet Tiger database used for timekeeping and other field operations, but ran into difficulties setting it up to provide access to Plaintiffs. (Id.) The parties negotiated access to these databases, including the scope of access, the terms on which access would be provided, and certain safeguards relating to Defendants' interests as well as work product protections of Plaintiffs' counsel, which Plaintiffs report were lengthy and protracted and took place over the course of several months. (Doc. 38-1 at 10; Trabucco Decl. ¶ 14.) Regardless of whether delay could or could not have been anticipated, as

1   previously discussed by this Court, three months had passed after the scheduling conference before
2   Plaintiffs actually propounded the discovery requests and then an additional four months of discovery
3   time was burned up debating the language of a protective order. (Doc. 37 at 1.) After the dispute arose
4   in July regarding the language of the protective order, the Court urged them to "redouble" their efforts
5   to complete discovery within the set deadlines. (Id.; Doc. 33.) However, rather than doing this, they
6   used another six weeks drafting the protective order, without conducting any additional discovery.
7   (Doc. 37 at 1.)

8   After the proposed protective order was entered and signed by the Court, according to
9   Plaintiffs, Defendants reported encountering technological difficulties and obstacles in setting up the
10  remote access. (Doc. 42 at 5; Trabucco Decl. ¶ 16.) Plaintiffs report that after finally gaining access to
11  the databases used by Defendants, Plaintiffs have been able to conduct depositions on class
12  certification issues that Plaintiffs completed on November 19 and 20, 2020. (Doc. 38-1 at 10.)
13  Plaintiffs also report that one deposition has been delayed due to medical procedures undergone by
14  one of the named Plaintiffs, Eugenio Cruz, and due to his present medical condition, he will not be
15  able to appear for deposition within the cutoff but will do so as soon as his health permits. (Doc. 38-1
16  at 5; Trabucco Decl., ¶ 18.)

17  According to Plaintiffs, the recent depositions have revealed certain omissions in the database
18  modules or data sets to which Plaintiffs have been given access, and missing documents, ESI, and
19  things that should have been produced but have not. (Doc. 38-1 at 5; Trabucco Decl., ¶ 19.) Plaintiffs
20  contend that what appears to be incomplete access and responses hindered Plaintiffs' discovery efforts.
21  (Doc. 42 at 7.) Plaintiffs further allege that COVID-19 has added additional delay to the productions
22  and discovery at issue here and has precluded in-person review of documents and in-person site
23  inspections and investigations. (Id. at 9.)

24  Plaintiffs appear to have demonstrated more diligence since the Court's last order. Taking into
25  consideration the circumstances created by COVID-19, the Court finds that Plaintiffs have
26  demonstrated good cause for modification of the scheduling order. See Fed. R. Civ. P. 16(b)(4). The
27  Court emphasizes that scheduling orders are "not a frivolous piece of paper, idly entered, which can be
28  cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp.*,

108 F.R.D. at 141). The Court again urges the parties to diligently complete discovery in a timely fashion.

**IV.     Conclusion and Order**

Accordingly, Plaintiff's motion to modify the existing scheduling order (Doc. 38) is GRANTED. The parties SHALL complete all non-expert discovery no later than March 1, 2021.[1]  The Court WILL NOT again amend the case schedule absent a showing of extraordinary good cause.

IT IS SO ORDERED.

Dated:    **December 14, 2020**              **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE

---

[1] The Court reserves ruling on any non-expert post certification discovery at this time.