UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIANA MARTINEZ-SANCHEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY VINEYARDS, INC., et al., <br><br> Defendants. | Case No.: 1:19-cv-01404-DAD-JLT <br><br> ORDER DENYING MOTION TO COMPEL DISCOVERY RESPONSES <br><br> (Doc. 45) |

Plaintiffs filed a motion to compel Defendants Anthony Vineyards, Inc. and Sycamore Labor, Inc. to provide further responses, including additional documents and electronic data, to Plaintiffs' Requests for Production of Documents, Set One and further responses to Plaintiffs' Interrogatories, Set One. (Doc. 45.) The parties filed a joint statement regarding Plaintiffs' motion to compel on March 2, 2021. (Doc. 50.) For the reasons set forth below, Plaintiffs' motion to compel is **DENIED**.

**I.     Relevant Background**

Sebastiana Martinez-Sanchez and Eugenio Antonio Cruz bring class and representative claims against Defendants Anthony Vineyards, Inc. and Sycamore Labor, Inc. alleging class-wide violations of the Agricultural Worker Protection Act and the California Labor Code they sustained while employed as field workers for Defendants table-grape growing and harvesting operations. (Doc. 50 at 3.) According to Plaintiffs, central to Plaintiffs' class allegations are that Defendants failed to compensate them and other class members for all hours worked, including time worked off the clock

1

before the scheduled start of shifts and after the scheduled end of shifts. (Id.) In addition, Plaintiffs claim that Defendants failed to provide them and class members with lawful meal periods and rest breaks or compensation in lieu thereof, or otherwise failed to accurately record the start and stop of meal periods. (Id.) Plaintiffs report that given these class allegations, Plaintiffs have sought class-wide discovery in anticipation of meeting the Rule 23 requirements. (Id.)

Defendants operate large databases containing payroll and timekeeping data. (Doc. 50 at 5.) The parties negotiated methods by which Plaintiffs would obtain remote access to the Famous and Pet Tiger databases to make the exchange of information contained in such databases more streamlined and efficient. (Id. at 5-6.) Defendants provided Plaintiffs with access to the Famous database on or about August 28, 2020, and to the Pet Tiger database on or about October 30, 2020. (Id. at 6.) On December 29, 2020, counsel for the parties discussed several categories of electronically stored information that Plaintiffs believed were relevant, whose existence had been disclosed in the 30(b)(6) depositions of Defendants in November 2020. (Id.) First was attendance scans of field worker employee badges that Plaintiffs believed were contained in Defendants' Pet Tiger database, and which later testimony has confirmed are contained there. (Id.) In that December conversation, counsel for Defendants represented that Defendants would check on whether badge scans, and any attendant metadata (such as time stamps), could be made available. (Id.) Defendants' counsel also confirmed that the access provided to Plaintiffs did not allow the review of this data. (Id.) Second was data relating to scans of packed grapes at Anthony Vineyards' cold storage facility after being transported from the fields. (Id.) Counsel for Defendants confirmed that this information was contained in a module of the Famous database that Plaintiffs did not have access to and questioned the usefulness of such data. (Id.)

On January 21, 2021, counsel for Plaintiffs sent follow up correspondence inquiring as to the status of these categories of data, since a supplemental production had not occurred. (Doc. 50 at 6.) Plaintiffs' counsel also reiterated the problem they were experiencing with extracting data from the Famous Software payroll module. (Id.) During the parties' January 27, 2021 telephone conference, counsel for Defendants stated they did not think that Defendants would be able to obtain a complete Famous backup copy. (Id.) Counsel for Plaintiffs provided defense counsel with the name of a Famous

representative (Gillaume Visot-Nolder) in the software company's technical services department who could assist with exporting data and who has worked with Plaintiffs' expert previously, but who in late 2020 said they would only work with the Famous client directly. (Id.) Plaintiffs' counsel also reiterated the request for access to the employee badge scans and attendant metadata (including time stamps) contained in the Pet Tiger database, and counsel for Defendants acknowledged that such information was contained in the Pet Tiger database but was excluded from Plaintiffs' review through the user-level access Plaintiffs' counsel were provided, and that only "administrative" level user access could review these timestamps which were contained in payroll "audit trail" reports. (Id.) Finally, Plaintiffs identified an issue in Pet Tiger that was only allowing their expert to prepare database information to reports in Adobe PDF format, as opposed to exporting the data in relational data formats where the operational functions among the data are not lost or degraded as they are with export to a static format like Adobe PDF format. (Id.)

On February 2, 2021, counsel for Defendants represented that Famous had opened Ticket #928222 for questions regarding downloading reports. (Doc. 50 at 7.) Counsel noted that while Famous was authorized to provide general support, it would not make any changes without client permission. (Id.)

On February 5, 2021, counsel for Defendants sent follow up correspondence addressing several categories of electronically stored information. (Doc. 50 at 7.) First, counsel for Defendants reiterated that Defendants have no control over the difficulties or delays experienced in running and downloading reports from the Famous Software data, and that it was an issue with Famous Software itself. (Id.) Second, counsel for Defendants confirmed that Plaintiffs do not have access to timestamps associated with scans of putative class member badges. (Id.) Third, counsel for Defendants represented that they would check to see if Plaintiffs' access to the Pet Tiger program could be changed from reporting solely to Adobe PDF to another format, such as Excel, to facilitate Plaintiffs' expert's review, organization, and analysis of such data. (Id.)

On February 11, 2021, counsel for the parties held a telephone conference to discuss these issues. (Doc. 50 at 8.) First, counsel for Plaintiffs reminded defense counsel that it was waiting for Defendants to reach out to the Famous technical service representative who had said they could assist

3

with exporting the data set, since Famous would only work with its own client, Anthony Vineyards. (Id.) To date, defense counsel has not provided an answer as to whether it has worked with Famous to resolve this issue. (Id.) Second, counsel for Defendants represented that it would not be producing any data of scans that take place in the fields, citing the undue burden it would cause Defendants in assembling and collecting that information and the doubt that this information would provide any indication of when work is actually happening. (Id.) Third, defense counsel represented that reports in Pet Tiger were only exportable in PDF form, a claim also repeated by Defendants' employee, Thomas Rodriguez, at his February 23, 2021 deposition. (Id.)

During that call, Plaintiffs' counsel reiterated their concerns with Defendants' discovery responses and substantively addressed these points. (Doc. 50 at 8.) During that phone conference, Plaintiffs' counsel indicated that they would be filing a motion to compel on these outstanding issues. (Id.) On February 16, 2020, Plaintiffs filed the present motion to compel. (Doc. 45.) To date, Defendants have not provided supplemental responses to Plaintiffs' requests for production and interrogatories at issue here, and the parties have not agreed to a resolution to these discovery disputes. (Doc. 50 at 8.) The parties filed a joint statement regarding Plaintiffs' motion to compel on March 2, 2021. (Doc. 50.)

## II.     Legal Standards

### A.     Scope of Discovery

Under the Federal Rules, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when "a party fails to answer an interrogatory submitted under Rule 33; or . . . a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. Fed. R. Civ. P. 26(b) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### B. Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time, place, and manner for the inspection; and specifies the form or forms in which electronically stored information can be produced. Fed. R. Civ. P. 34(b). Thus, a request is sufficiently clear if it "places the party upon 'reasonable notice of what is called for and what is not.'" *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a respondent of average intelligence would know what items to produce").

The responding party must respond in writing and is obliged to produce all specified relevant and non-privileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified. Fed. R. Civ. P. 34(a). Actual possession, custody or control is not required. "A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995). Such documents include documents under the control of the party's attorney. *Meeks v. Parson*, , 2009 WL 3303718 (E.D. Cal. Sept. 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in his attorneys' possession, custody or control").

In the alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P. 34(b)(2)(A)-(B). When a party resists discovery, he "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). Boilerplate objections to a request for a production are not sufficient. *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If "a party fails to produce documents or fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34," the propounding party may make a motion to compel production of the documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery." *Hasan v. Johnson*, 2012 WL 569370 at *2 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

### C.     Interrogatories

A party may propound interrogatories relating to any matter that may be inquired to under Rule 26(b). Fed. R. Civ. P. 33(a). A responding party must respond to the fullest extent possible, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3)-(4). In general, a responding party is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, 2010 U.S. Dist. LEXIS 93447, at *9 (E.D. Cal. Aug. 24, 2010) (citing *L.H. v. Schwarzenegger*, 2007 U.S. Dist. LEXIS 73753 (E.D. Cal. Sep. 21, 2007)). Further, the responding party must supplement a response if the information sought is later obtained or the previous response requires a correction. Fed. R. Civ. P. 26(e)(1)(A).

### III.    Discussion

Plaintiffs motion to compel seeks amended responses and further production of documents and data responsive to Plaintiffs' Requests for Production of Documents, Set One, Nos. 1, 7, 8, 9, 10, 11,

13, 17, 19, 27, 28 and 39. (Doc. 45 at 2.)[1] These document and data requests pertain to putative class member payroll and timekeeping systems and databases, and food traceability systems and databases, as well as their related records. (Id.) Plaintiffs also seek further response to Plaintiffs' Interrogatories, Set One, Nos. 2, 3, 4, 5, 6, 7, 8, 9 and 10, which seek information related to putative class member payroll and timekeeping systems and databases, and food traceability systems and databases, as well as their related records. (Id.) As noted by Defendants, Plaintiffs' position is not entirely clear, as Plaintiffs present the motion as addressing twelve document request and nine interrogatories but do not frame the issues clearly. (Doc. 50 at 25.) The issues presented appear to revolve around production and responses related to records and access to the Pet Tiger timekeeping system and the Famous payroll database.

### A. Pet Tiger Timekeeping System

Plaintiffs claim that in this action, the accuracy of Defendants' timekeeping is in dispute and actual time data recorded electronically exists. (Doc. 50 at 21.) Plaintiffs assert that its complaint alleges unpaid time worked off-the-clock, failure to provide meal and rest periods or compensation in lieu thereof, timekeeping documents and related electronically stored information (Requests for Production of Documents Nos. 1, 7, 9, 11, 17, 27, 28, 39; Special Interrogatories Nos. 2, 3, 4, 7, 8, 9, 10) that could indicate whether employees were at work under the control of Defendants and is of great importance and directly relevant to the claims asserted. (Id.) Plaintiffs detail the process used to take attendance or enter events using the Pet Tiger software, to keep track of, for example, the start of a shift, the start and end of a rest break, the start and end of a meal period, and the end of a shift, and assert that such information in the Pet Tiger electronic database is relevant and discoverable. (Id. at 21-23.) Plaintiffs also describe that Defendants use the Pet Tiger system to record the number of boxes each group of workers packs during the harvest for purposes of tracking their piece rate production and claim these are relevant. (Id. at 23.)

Plaintiffs' counsel requests access to the employee badge scans and attendant metadata

---

[1] Plaintiffs also now reference Request for Production No. 5 (Doc. 50 at 24-25), however as noted by Defendants, this request was not referenced in the Plaintiffs' notice of motion (Doc. 50 at 30; see also Doc. 45 at 2). Defendants assert that Plaintiffs' counsel have not raised this issue with Defendants previously, and nothing indicates that such an "entity relationship diagram" exists. (Doc. 50 at 30.) The Court accordingly denies this request.

(including time stamps) contained in the Pet Tiger database. (Doc. 50 at 6.) Relatedly, Plaintiffs identified an issue in Pet Tiger that was only allowing their expert to prepare database information to reports in Adobe PDF format, as opposed to exporting the data in relational data formats where the operational functions among the data are not lost or degraded as they are with export to a static format like Adobe PDF format. (Id.)

Defendants' counsel acknowledge that time stamped metadata is contained in the Pet Tiger database and only "administrative" level user access could review these timestamps, but they cannot be output into a report. (Doc. 50 at 28.) Defendants explain that Sycamore's Pet Tiger does not have a report that can be generated showing what time employee badges were scanned, what time employee time entries were created, or what time boxes of grapes were scanned. (Doc. 50 at 28; Doc. 48, Loeffel Decl. ¶ 17.) According to Defendants, to obtain the information, it would have to be manually "screenshot" and saved as an image file. (Id.) Defendants have conservatively estimated that it would take 22,000 hours to produce this information. (Doc. 50 at 28; Loeffel Decl. ¶ 18.) Defendants note that this estimate was developed before Plaintiffs' counsel indicated a desire to also see scan data for individual boxes of grapes (Doc. 50 at 28), suggesting the time would be greater than the estimated hours provided. Defendants accordingly contend that 22,000 hours to produce only some of the information requested by Plaintiffs would be an undue burden. (Id.); *see United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 239 (S.D. Cal. 2015) ("'inaccessible' does not necessarily indicate the relevant electronically stored information is physically damaged or written in an obscure format; rather, 'inaccessible' simply means that expenditure of resources required to access the contents is itself unreasonable").

Defendants further contend that the metadata would be of limited utility. (Doc. 50 at 29.) Specifically, Defendants allege that Sycamore did not fully implement using Pet Tiger to record employee time worked until 2019 (Doc. 50 at 29; Loeffel Decl. ¶ 9), and the complaint encompasses a period of four years from the date of filing the initial complaint (October 2019). (Doc. 6 at 2, First Amended Complaint ¶ 1.) This would mean that the Pet Tiger system would only contain records applicable for this action for some months of 2019, while the action encompasses a period of four

years. Defendants also report that no time scan data for boxes of grapes exists at all except during the harvest. (Doc. 50 at 29.)

Moreover, according to Defendants, the timestamps themselves can show what time an entry was created, but they cannot definitively establish what time that event happened. (Doc. 50 at 29; Loeffel Decl. ¶ 10-12.) In other words, Pet Tiger's employee start and stop times are not generated using badge scans. (Loeffel Decl. ¶ 12.) For example, Defendants explain, if the data shows an employee's badge was scanned at 7:05 a.m., that scan is several steps removed from the time the employee started work that day, and while it may shed some light on when the employee likely started work, testimony from the employee or other persons on the crew will still be necessary to establish that the employee's start time in Pet Tiger is inaccurate. (Doc. 50 at 29.) Accordingly, Defendants contend, the benefit of analyzing when time entries were created is outweighed by the undue burden of producing this information and the fact that the time of creation is not determinative of the accuracy of the entry. (Id.)

Accordingly, contrary to Plaintiffs' allegations, it is not that Defendants do not want to make certain information available to Plaintiffs (Doc. 50 at 21), instead, Defendants maintain, and the Court agrees, that the burden and utility of the information outweighs the benefit of analyzing this information. Therefore, the Court DENIES Plaintiffs' requests to compel related to the Pet Tiger timekeeping system.

Plaintiffs motion also asserts that Pet Tiger was only allowing their expert to prepare database information reports in Adobe PDF format, as opposed to exporting the data in relational data formats (such as Microsoft Excel). (Doc. 50 at 6.) However, Defendants provide that this is how the Pet Tiger system operates, and Sycamore does not have the ability to generate reports in any other format. (Id. at 29.) Defendants are entitled to produce electronically stored information in the form in which it is ordinarily maintained. See Fed. R. Civ. P. 34(b)(2)(E)(ii).

### B.     Famous Payroll Database

Plaintiffs' counsel asserts they have experienced problems with extracting data from the Famous Software payroll module that Defendants provided access to and seek to obtain a complete Famous backup copy. (Doc. 50 at 6.) However, as Defendants assert, Plaintiffs' counsel already has

9

1  this data and is now demanding another copy of Sycamore's Famous payroll data. (Doc. 50 at 26.)
2  Specifically, Sycamore's payroll data was produced to Plaintiffs' counsel in August 2020. (Doc. 47,
3  Judy Decl. ¶ 6.) In November 2020, Plaintiffs' counsel raised issues with running reports in Famous
4  and with it "timing out." (Doc. 50 at 27; Judy Decl. ¶ 7, Exh. C.) In the correspondence between
5  counsel, Plaintiffs' counsel also identified how they were able to get around the issue and reported that
6  they had been able to run reports for shorter time periods, including running a report for one year. (Id.)
7  This is the same solution utilized by Defendants, *i.e.*, to run reports with smaller parameters to avoid
8  the system timing-out. (Judy Decl. ¶ 9.) Defendants' counsel also inquired about what reports they
9  would like them to run, offering Plaintiffs' counsel assistance in response to their complaints;
10 however, it appears Plaintiffs' counsel did not take advantage of this offer. (Doc. 50 at 27; Judy Decl.
11 ¶ 7, Exh. C.) After Defendants investigated the issue, they determined that the issue was not
12 something Defendants had control over but was a function of the size of the reports Plaintiffs were
13 attempting to run. (Doc. 50 at 27; Judy Decl. ¶ 10.)
14     Although Plaintiffs have encountered issues with using the Famous database already provided
15 by Defendants, Defendants' counsel has provided alternative solutions to extracting the data they
16 desire, and has offered to run reports for Plaintiffs' counsel, though Plaintiffs' counsel has not taken
17 advantage of this offer. Because Defendants have already produced the Famous database to Plaintiffs,
18 the request for a complete Famous backup copy would be unreasonably cumulative. See Fed. R. Civ.
19 P. 26(b)(2)(C)(i) (the district court must limit discovery if it determines that "the discovery sought is
20 unreasonably cumulative or duplicative, or can be obtained from some other source that is more
21 convenient, less burdensome, or less expensive"). Additionally, "[a] party need not produce the same
22 electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(iii).
23 Accordingly, Plaintiffs' requests to compel regarding the Famous payroll database are DENIED.
24 ///
25 ///
26 ///
27 ///
28 ///

**IV.    Conclusion and Order**

Based upon the foregoing, the Court **ORDERS** that Plaintiffs' motion to compel (Doc. 45) is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 5, 2021**                              /s/ Jennifer L. Thurston
                                                                        UNITED STATES MAGISTRATE JUDGE