UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIANA MARTINEZ-SANCHEZ, et al., <br> Plaintiffs, <br> v. <br> ANTHONY VINEYARDS, INC., et al., <br> Defendants. | Case No.: 1:19-cv-01404-DAD-JLT <br><br> AMENDED ORDER DENYING MOTION TO MODIFY SCHEDULING ORDER <br><br> (Doc. 44) |

The Court granted Plaintiffs' first motion to modify the scheduling order on December 15, 2020. (Doc. 43.) On February 9, 2021, Plaintiffs filed a second motion to modify the scheduling order. (Doc. 44.) Defendants filed an opposition on February 19, 2021 (Doc. 46), and Plaintiffs filed a reply on March 2, 2021 (Doc. 51). For the following reasons, Plaintiffs' motion is DENIED.

**I.     Factual Allegations and Background**

The Court entered a scheduling order in this case on February 21, 2020. (Doc. 30.) On September 16, 2020, the parties submitted a stipulation to extend the non-expert discovery cutoff, which the Court denied. (Docs. 36, 37.) On November 20, 2020, Plaintiffs filed a motion to modify the schedule, and the Court granted Plaintiffs' motion. (Docs. 38, 43.) Accordingly, the schedule was modified once before, extending the deadline to complete all non-expert discovery from November 30, 2020 to March 1, 2021. (Doc. 43.) Plaintiffs' first motion to modify the schedule was related, in part, to Plaintiffs' access to two electronic databases used by Defendants: Famous Software and Pet Tiger.

(Trabucco Decl. at ¶ 3.) According to Plaintiffs, the parties negotiated methods by which Plaintiffs would obtain access to these databases in order to make the exchange of information streamlined and efficient. (Id.) Plaintiffs report that they sought a modification of the fact discovery cutoff because they had not been provided with access to all requested and discoverable categories of ESI, and depositions revealed documents were withheld, including: time stamps relating to class member work and timekeeping practices; records relating to the transport of product in the fields, relevant to the time that class members start and end work; crop inventory and tracking data with time stamps related to when class members may have worked without compensation; and accounts payable data relating to whether Defendants provided tools used by class members. (Id.)

As described by Plaintiffs, their first motion to modify was also related to several other categories of documents responsive to discovery requests that Defendants had not produced at the time, even though representatives of Defendants had testified the documents existed, including: operating agreements between Anthony Vineyards, Inc. and Sycamore Labor, Inc. neither produced, nor disclosed, prior to their revelation in depositions of the Defendant corporations; disclosures provided to employees regarding compensation and wage rates constituting the working arrangement and offer of employment; schedules created by farm and field management personnel; class member work schedules and the time for which workers are paid, as well as worktime that is unrecorded and unpaid; written communications between directors, officers, managers and supervisors using company electronic mail accounts; text communications between directors, officers, managers and supervisors using company cell phones; and training logs and attendance sheets for training conducted of Sycamore managers and supervisors. (Trabucco Decl. at ¶ 4.)

Plaintiffs report that counsel for the parties conducted a phone conference on December 29, 2020 to discuss outstanding discovery issues, including relevant and discoverable ESI whose existence had been disclosed by Defendants' corporate designees in the November 2020 depositions, which should have been previously produced by Defendants, and that Plaintiffs asked to be part of a supplemental discovery production. (Trabucco Decl. at ¶ 5.) First was ESI relating to scans of employee badges that Plaintiffs believed were contained in Defendants' Pet Tiger timekeeping database. (Id.) Counsel for Defendants confirmed that the access provided to Plaintiffs did not allow

2

the review of this data, and would check on whether badge scans, and attendant time stamps, were available. (Id.) Second was ESI relating to cold-storage facility scans of grapes, which Defendants' witness had testified also include timestamps, and which had not been produced because defense counsel claimed they did not contain time data. (Id.) Counsel for Plaintiffs noted that Anthony Vineyards, Inc.'s person most qualified testified that this data was located in the Famous inventory module, a section of Defendants' database to which Plaintiffs had not been provided access. (Id.) According to Plaintiffs, counsel for Defendants questioned the usefulness of such data and said they would consider Plaintiffs' request for access to it. (Id.)

When a supplemental production was not made in early January 2021, Plaintiffs' report that its counsel sent defense counsel additional correspondence on January 21, 2021 asking for an update on these categories of ESI (and other categories of non-electronic discovery). (Trabucco Decl. at ¶ 6.) Counsel for Plaintiffs also revisited the concern relating to Defendants' Famous payroll data. (Id.) Plaintiffs' assert that its expert was still reporting issues running reports of class data because the client used to access Defendants' records times out regularly. (Breshears Decl. at ¶ 3.) Plaintiffs' counsel requested that Defendants ask Famous for a backup of the data, since it was the only way to provide Plaintiffs' expert access to the full data set. (Trabucco Decl. at ¶ 6.) Plaintiffs report that this correspondence went unanswered, and Plaintiffs' counsel sent a follow-up message on January 24, 2021. (Trabucco Decl. at ¶ 7.)

Counsel for the parties conducted a telephone conference on January 27, 2021. (Trabucco Decl. at ¶ 8.) Counsel for Plaintiffs reported that they and their expert had not been able to adequately extract data from the Famous payroll module, and asked if alternatively, a copy of the database could be exported in whole. (Id.) According to Plaintiffs, counsel for Defendants expressed doubt as to whether Defendants would be able to obtain a complete backup copy. (Id.) Plaintiffs' counsel provided defense counsel with the name of a Famous client services representative (Gillaume Visot-Nolder) who has worked with Plaintiffs' expert previously and could assist with exporting data. (Id.)

Plaintiffs' counsel also requested access to employee badge scans and metadata (including time stamps) contained in the Pet Tiger timekeeping database. (Trabucco Decl. at ¶ 8.) According to Plaintiffs, counsel for Defendants acknowledged that such information did exist, was contained in Pet

Tiger, but had been excluded from the access provided to Plaintiffs through user-level controls set by Defendants. (Id.) Counsel for Defendants reported that only if Defendants provided administrative-level access could Plaintiffs obtain timestamps contained in payroll "audit trail" reports. (Id.) According to Plaintiffs, counsel for Defendants represented that Plaintiffs would be unable to run and download any such report. (Id.)

Additionally, Plaintiffs' counsel noted that the access provided to Plaintiffs precluded exporting data and Plaintiffs and their expert were only permitted to print reports to the Adobe PDF format, which precluded expert calculations that would be possible if formats that maintained the relational data were available (such as Microsoft Excel), where the operational functions, and links, among the data are not lost or degraded. (Trabucco Decl. at ¶ 8.) Defense counsel identified Tom Rodriguez, in charge of maintaining Defendants' Pet Tiger system, as an individual who could address this issue. (Id.) Defense counsel also informed Plaintiffs' counsel of a Covid-19 outbreak that had sickened a number of individuals whom Plaintiffs have sought to depose. (Id.)

Finally, Plaintiffs report that counsel for Defendants confirmed, as Anthony Vineyards, Inc.'s witness at deposition had confirmed, that there are time stamps associated with scans of produce arriving at Anthony Vineyards, Inc.'s cold storage facility, but defense counsel questioned the relevance of this information. (Trabucco Decl. at ¶ 8.) Counsel for Plaintiffs reiterated that scans of grapes being transported from fields to the cold storage facility provide relevant information as to when work is occurring in the fields and was relevant to whether off the clock work occurred outside of the time recorded for field work. (Id.) According to Plaintiffs, defense counsel expressed doubt as to whether any discovery requests would cover such information. (Trabucco Decl. at ¶ 9-10.)

On November 18, 2020, Plaintiffs' counsel contacted Famous Software's Professional Services regarding the difficulty they and Plaintiffs' expert encountered preparing reports of the class data through the access provided by Defendants. (Trabucco Decl. at ¶ 11.) Plaintiffs report that Famous' Professional Services' department indicated that "[a]ny sort of work we do would need to be cleared with, and billed to, one of our customers." (Id.) This fact was confirmed by defense counsel's February 2, 2021 correspondence that, while Famous had opened Ticket #928222 for general support questions regarding the speed of running and downloading reports, Famous would not be able to make

any changes without its client Anthony Vineyards, Inc.'s permission. (Trabucco Decl. at ¶ 12.) Plaintiffs report that to date, Plaintiffs do not know whether Defendants have worked with Famous Software—but the access to class data remains incomplete and inadequate for Plaintiffs' expert to prepare a report. (Breshears Decl. at ¶ 3.)

According to Plaintiffs, on February 5, 2021, counsel for Defendants sent follow up correspondence addressing several categories of ESI. (Trabucco Decl. at ¶ 13.) First, counsel for Defendants reiterated that Defendants have no control over the difficulties or delays experienced in running and downloading reports from the Famous Software data, that this is strictly an issue with Famous Software itself. (Id.) According to Plaintiffs, counsel for Defendants did not address the fact that Anthony Vineyards, Inc., as Famous Software's client, retains ultimate control regarding these customer service issues. (Id.)

Second, Plaintiffs report that counsel for Defendants confirmed that Plaintiffs do not have access to time stamps of employee badge scans, a set of data in the Pet Tiger system. (Trabucco Decl. at ¶ 13.) Plaintiffs' expert has indicated that he believes the time stamp data contained within the Pet Tiger system is important to his review. (Breshears Decl. at ¶¶ 4-5.)

Third, defense counsel said it would inquire whether remote access to the Pet Tiger system could be changed from reporting solely in Acrobat PDF to another format, such as Excel, to facilitate Plaintiffs' expert's review, organization, and analysis of such data. (Trabucco Decl. at ¶ 13.)

Finally, defense counsel confirmed Defendants will not produce cold storage scan data, as "there is no reasonable possibility that Famous inventory data is going to tell you anything about the timing of a crew's rest break, meal break, or start or end time." (Trabucco Decl. at ¶ 13.)

Since then, Plaintiffs have sent out for service subpoenas to Famous Software, LLC and Orange Enterprises, Inc. (maker of Pet Tiger), in order to obtain full exports of these databases. (Trabucco Decl. at ¶ 15.) The production of documents pursuant to those subpoenas is scheduled for February 24, 2021 and February 25, 2021, respectively. (Id.)

Plaintiffs report that on February 5, 2020, Plaintiffs sought to modify the schedule by stipulation. (Trabucco Decl. at ¶ 19.) However, Defendants declined to stipulate. (Id.)

Pursuant to Plaintiffs' request, the Court has previously modified the schedule in this case on

December 15, 2020. (Doc. 43.) Plaintiffs filed this second motion to modify the scheduling order on February 9, 2021. (Doc. 44.) Defendants filed an opposition on February 19, 2021 (Doc. 46), and Plaintiffs filed a reply on March 2, 2021 (Doc. 51).

## **II.     Legal Standard**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule

6

> 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III. Discussion and Analysis

Plaintiffs have been aware of the scheduling order deadlines since the order was entered on February 21, 2020 (Doc. 30) and were aware of these deadlines at the time of making the first request to the Court to modify the scheduling order. As Defendants note, Plaintiffs' counsel did not seek to extend any deadlines in their first motion to modify the scheduling order other than the non-expert discovery deadline. (Doc. 46 at 5; Judy Decl. ¶ 14-15.) Even in his declaration, Plaintiffs' counsel admits that "[i]n hindsight, the initial motion to modify the scheduling order that only changed the non-expert discovery deadline without requesting a similar change to the expert discovery, non-dispositive motion, and class certification motion deadlines was overly ambitious." (Doc. 44-2 at 9.)

After the Court granted Plaintiffs' first request to modify the schedule on December 15, 2020 (Doc. 43), Plaintiffs report that counsel for the parties conducted a phone conference on December 29, 2020 to discuss outstanding discovery issues (Trabucco Decl. at ¶ 5). When a supplemental production was not made in January 2021, Plaintiffs' counsel sent defense counsel additional correspondence on January 21, 2021 asking for an update on these categories of ESI (and other categories of non-electronic discovery). (Trabucco Decl. at ¶ 6.) Although the parties conducted a phone conference just a couple weeks after the Court granted Plaintiffs' first motion to modify the scheduling order, Plaintiffs waited almost a month before following up with the Defendants after not receiving any supplemental correspondence.

Defendants contend that Plaintiffs have failed to establish their diligence and fail to demonstrate good cause to modify the scheduling order. (Doc. 46 at 5.) Defendants note that Plaintiffs should have known in late December 2020 or in early January 2021 that Plaintiffs' expert needed thirty days to analyze data to prepare his report, however, Plaintiffs waited until after Defendants served their expert disclosure to broach the subject. (Doc. 46 at 5-6.) Plaintiffs describe that they have raised issues regarding the ability to run reports of any significant size in the Famous payroll software. (Doc. 44-1 at 8-9.) In response, Defendants contend that Plaintiffs' counsel have had access to the

Famous payroll software since August 2020 and offered Plaintiffs solutions to the issues they were encountering with running a payroll detail report for the entire class period. (Doc. 46 at 6; Judy Decl. ¶ 6.) Defendants describe that they have the same issue with the Famous payroll software and use the method of running the reports with smaller parameters. (Doc. 46 at 6; Loeffel Decl. ¶ 3.) Defendants also assert that they offered to run any reports for Plaintiffs, but Plaintiffs counsel never took advantage of this. (Judy Decl. ¶ 9.) Accordingly, Defendants argue that Plaintiffs' counsel has known about the issues and had identified solutions since November 2020, and their failure to get their expert ready in time shows a lack of diligence. (Doc. 46 at 6.)

Plaintiffs also have identified an issue with Defendants failure to produce time stamps. (Doc. 44-1 at 9.) However, Defendants claim that they did not "promise that the Pet Tiger data available included time-stamps," it is used to record time worked. (Doc. 46 at 7.) Regarding format issues with the Pet Tiger program, Plaintiffs' counsel has had access to the Pet Tiger program since October 30, 2020, and Defendants contend that Plaintiffs' counsel were aware that Pet Tiger outputs reports in Adobe PDF format when they brought their first motion to amend the scheduling order. (Doc. 46 at 6; Judy Decl. ¶ 11-13; Loeffel Decl. ¶ 15.)

Not only did Plaintiffs fail to modify these additional dates they seek to extend now in their first request to the Court to modify the scheduling order, Defendants also note that Plaintiffs have been aware of the issues they raise for months. The Court noted in its previous order that it will not again amend the case schedule absent a showing of extraordinary good cause (Doc. 43 at 11), and Plaintiffs have failed to make such a showing. Indeed, they have failed to make the good cause showing required by the Rule.[1] See Fed. R. Civ. P. 16(b)(4). The Court emphasizes that scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp.*, 108 F.R.D. at 141). The Court again urges the parties to diligently complete discovery in a timely fashion.

---

[1] In its original order, the Court cited to Fed.R.Civ.P. 16(b)(4) for the proposition that the "schedule may be modified only for good cause and with the judge's consent." The Court failed to appreciate it appeared as though it was imposing a higher standard. This amended order ensures clarity on this point.

8

Based on the allegations, it appears the issues Plaintiffs have encountered center around their assertion that Defendants have failed to produce certain discovery. Plaintiffs assert that Defendants failed to produce time stamps relating to scans of employee badges and scans of produce, which have hindered Plaintiffs' expert's ability to complete his report and analysis. (Doc. 44-1 at 9.) As Plaintiffs identify themselves, "Plaintiffs will now be forced to move to compel plainly discoverable sets of ESI." (Doc. 44-1 at 9.) Accordingly, the appropriate relief is a motion to compel to address any discovery responses that remain incomplete, which Plaintiffs filed a week after filing the instant motion to modify the scheduling order and is presently pending before the Court. (Doc. 45.)

**IV.     Conclusion and Order**

For the foregoing reasons, Plaintiffs' motion to modify the existing scheduling order (Doc. 44) is DENIED.

IT IS SO ORDERED.

Dated:   **March 19, 2021**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE