UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIANA MARTINEZ-SANCHEZ et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHONY VINEYARDS, INC. et al.,<br><br>Defendants. | No. 1:19-cv-01404-DAD-JLT<br><br><u>ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY STAY OF THE CLASS CERTIFICATION FILING DEADLINE AND DENYING PLAINTIFFS' MOTIONS FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S ORDERS OF MARCH 4, 5, & 19, 2021 ORDER</u><br><br>(Doc. Nos. 54, 57, 60, 61) |

This matter is before the court on three motions for reconsideration filed by plaintiffs Sebastiana Martinez-Sanchez and Eugenio Antonio-Cruz: (i) plaintiffs' motion for reconsideration of the magistrate judge's discovery order of March 5, 2021 (Doc. No. 53) denying plaintiffs' motion to compel further discovery responses, including additional documents and electronic data, to plaintiffs' requests for production of documents and interrogatories, (Doc. No. 57); (ii) plaintiffs motion for reconsideration of the magistrate judge's order of March 4, 2021 (Doc. No. 52) denying plaintiffs' motion to modify the scheduling order, (Doc. No. 54); and (iii) plaintiffs motion for reconsideration of the magistrate judge's amended order of March 19, 2021 (Doc. No. 55) denying plaintiffs' motion to modify the scheduling order, (Doc. No. 60). Also

1

before the court is plaintiffs' motion for a temporary stay of the class certification filing deadline of April 30, 2021 pending the court's resolution of their motions for reconsideration. (Doc. No. 61). For the reasons set forth below, plaintiffs' motion for reconsideration and motion for a temporary stay will be denied.

**BACKGROUND**

Plaintiffs bring class and representative claims against defendants Anthony Vineyards, Inc. and Sycamore Labor, Inc. alleging class-wide violations of the Agricultural Worker Protection Act and the California Labor Code during their employment as field workers for defendants' grape growing and harvesting operations. (Doc. No. 50 at 3.) Plaintiffs allege that defendants failed to compensate them and class members for all hours worked, including time worked off the clock before and after the scheduled shift times. (*Id.*) Plaintiffs also allege that defendants failed to provide employees with required meal periods and rest breaks or compensation in lieu of such breaks, or otherwise failed to accurately record the start and stop time of meal periods. (*Id.*)

**A.   Motions for Reconsideration of Orders Denying Modification of the Scheduling Order**

On February 21, 2020, the assigned magistrate judge issued a scheduling order which set November 30, 2020 as the non-expert discovery cutoff date, January 29, 2021 as the expert disclosure deadline, and April 30, 2021 as the deadline for plaintiffs to file a class certification motion. (Doc. No. 30 at 2–3.) On November 20, 2020, plaintiffs sought an extension of the non-expert discovery cutoff to March 30, 2020, which the magistrate judge granted on December 15, 2020. (Doc. Nos. 38, 43.)

On February 9, 2021, plaintiffs filed a second motion seeking to modify the scheduling order and to further extend the deadlines for conducting and completing expert discovery, filing of non-dispositive motions, and the filing of a class certification motion, asserting that additional time was necessary to obtain further access to defendants' Famous Software payroll database and Pet Tiger timekeeping database. (Doc. No. 44-1 at 2.) Therein, plaintiffs argued that good cause existed to modify the scheduling order because expert data analysis has been hindered by: (1) the

inability to run large reports of the Famous payroll database due to bandwidth issues on defendants' part and defendants' refusal to authorize their payroll vendor to provide plaintiffs a whole export of the database to remedy the reporting issue; (2) their lack of access to time stamps of daily employee badge scans in defendants' Pet Tiger timekeeping database; and (3) defendants' refusal to produce time stamps relating to scans of produce transported and brought into defendants' cold-storage facility. (Doc. No. 44-1 at 8–9.)

Defendants filed an opposition to that motion on February 19, 2021, arguing that plaintiffs had failed to establish their diligence and failed to show good cause to further modify the scheduling order because plaintiffs had been provided access to defendants' payroll and timekeeping databases by October 2020 and should have sought the requested modification in their first motion to modify the scheduling order which they had filed on November 20, 2020. (Doc. No. 46 at 5–6.) In particular, defendants asserted that plaintiffs' counsel knew about the reporting issue with the Famous payroll database since November 2020, that it was an issue defendants also had experienced and circumvented by running reports with smaller parameters, and that defendants offered to run such report for plaintiffs. (Doc. Nos. 46 at 6; 47 at ¶¶ 6, 9; 48 at ¶ 3.) Defendants also asserted that plaintiffs received access to the Pet Tiger timekeeping database no later than October 30, 2020, and were aware that the software output reports in Adobe PDF format did not necessarily include time stamps. (Doc. Nos. 46 at 6–7; 47 at ¶¶ 11–13; 48 at ¶ 15.)

Plaintiffs filed a reply thereto on March 2, 2021, reiterating their need to access defendants' databases in a method that would allow them to run operable reports and the importance analysis of such data, particularly the time stamp data, would bear on plaintiffs' claims. (Doc. No. 51.) Plaintiffs contended that defendants' proposed solution to the Famous payroll reporting issue was a nonviable method of analysis due to the sheer volume of data which prevented smaller reports run for every workweek and every crew. (*Id.* at 3.) Plaintiffs also argued that depositions taken of defendants' employees in February 2021 supported plaintiffs' claim that Pet Tiger data can be exported into a format that is not Adobe PDF, although one
/////

1 | employee merely described it as "exported on a file to our Famous drive" and another described it
2 | as a text format. (*Id.* at 8–9.)

3 | On March 4, 2021, the magistrate judge issued an order denying plaintiffs' motion to
4 | further modify the scheduling order. (Doc. No. 52.) The magistrate judge found that plaintiffs
5 | had failed to demonstrate their due diligence and good cause to modify the scheduling order, in
6 | part because when plaintiffs had requested a modification of the scheduling order in November
7 | 2020, they were apparently aware of the same reporting and access issues but sought only an
8 | extension of the non-expert discovery deadline at that time; plaintiffs did not seek in that
9 | November 2020 request to extend the deadlines for expert discovery, non-dispositive motions,
10 | and a class certification motion. (*Id.* at 7). The magistrate judge also noted that plaintiffs waited
11 | almost a month before following up with defendants regarding supplemental production of
12 | discovery and also waited to until after defendants served their expert disclosure before even
13 | discussing an extension of the expert discovery deadline. (*Id.*)

14 | On March 18, 2021, plaintiffs filed a motion for reconsideration of the magistrate judge's
15 | order of March 4, 2021 denying their motion to modify the scheduling order. (Doc. No. 54.)
16 | Therein, plaintiffs argue that the magistrate judge incorrectly applied a higher "extraordinary
17 | good cause" standard, and they continue to argue that they had shown good cause to extend the
18 | deadlines for expert discovery, the filing of non-dispositive motions, and a class certification
19 | motion. (*Id.*) On March 19, 2021, the magistrate judge issued an amended order clarifying that
20 | in denying the plaintiffs' motion to modify the scheduling order, the court had applied the "good
21 | cause" standard and not a higher "extraordinary good cause" standard. (Doc. No. 55 at 8, n.1.)
22 | On April 2, 2021, plaintiffs filed a motion for reconsideration of the amended order denying their
23 | motion to modify the scheduling order, arguing that the magistrate judge had in fact applied the
24 | higher "extraordinary good cause" standard, and that error was not rectified by the clarification
25 | provided in the amended order. (Doc. No. 60 at 4.)

**B.     Motion to Reconsider Order Denying Motion to Compel Discovery Responses**

27 | On February 16, 2021, plaintiffs filed a motion to compel defendants to provide
28 | supplemental responses to plaintiffs' requests for production and interrogatories. (Doc. No. 45.)

The motion contained no argument and only listed the requests for production of documents and interrogatories for which plaintiffs sought responses from defendants. (*Id.* at 1.) On March 2, 2021, the parties filed a joint statement regarding the motion to compel, in which they described the issues involved in their discovery dispute. (Doc. No. 50.) The joint statement highlighted the same issues that plaintiffs had emphasized in support of their motion to modify the scheduling order. Plaintiffs sought production of: (1) attendance scans of field worker employee badges that plaintiffs believed were contained in the Pet Tiger timekeeping database, and which later testimony confirmed are contained in that database; and (2) data related to transportation scans of packed grapes at defendants' cold storage facility after transportation from the fields—data that defendants confirmed plaintiffs did not have access to, though defendants disputed the relevance of such data. (*Id.* at 6, 8.) Plaintiffs also emphasized the difficulties with running large reports with Famous timekeeping data and the inability to export Pet Tiger data in a data relational format rather than Adobe PDF. (*Id.* at 6, 8.)

On March 5, 2021, the magistrate judge denied plaintiffs' motion to compel. (Doc. No. 53.) The magistrate judge found that the burden of production and utility of the scans that plaintiff sought from the Pet Tiger timekeeping information outweighed the benefit to plaintiffs of analyzing that information because: (i) the Pet Tiger software did not have a reporting function for timestamps, such that collecting the information would require at least 22,000 hours of work in manually taking screenshots of each employee badge scan, employee time entry, and scan of boxes of grapes; (ii) the Pet Tiger software only contained records for some months of 2019, less than a quarter of the four-year class period; and (iii) the timestamps do not definitively establish the time at which an event happened. (*Id.* at 8–9.) The magistrate judge also found that plaintiffs were only entitled to the Pet Tiger data in the form in which it is ordinarily maintained, and defendants had represented that they lacked the ability to generate reports in any format but Adobe PDF. (*Id.* at 9.) Furthermore, the magistrate judge found that plaintiffs' request for another copy of defendants' Famous payroll data would be needlessly cumulative because defendants had provided alternative solutions to plaintiffs' data extraction and reporting issues, and producing another copy of the data would not resolve those issues. (*Id.* at 10.)

On March 19, 2021, plaintiffs filed the pending motion for reconsideration of the magistrate judge's March 5, 2021 order denying their motion to compel the production of supplemental discovery related to defendants' Famous payroll and Pet Tiger timekeeping databases. (Doc. No. 57.) Therein, plaintiffs argued that the magistrate judge failed to consider the proportionality factors required by Rule 26 of the Federal Rules of Civil Procedure and had erred in finding that the Pet Tiger timestamps could only be produced via manual screenshots, that the native format for Famous payroll data reports was Adobe PDF, and that another copy of defendants' Famous payroll data would be cumulative. (Doc. No. 57-1 at 2.) In an opposition filed on March 24, 2021, defendants contend that the magistrate judge properly analyzed plaintiffs' motion to compel as required by Rule 26 and that plaintiffs had failed to show that any of the magistrate judge's factual findings in contention were erroneous. (Doc. No. 59 at 2.)

**C.     Motion for a Temporary Stay of Class Certification Deadline**

On April 21, 2021, plaintiffs filed a motion to stay the April 30, 2021 filing deadline for their motion for class certification—one of the deadlines they sought to extend in their motion to modify the scheduling order, which the magistrate judge denied in an order that is now before the court on plaintiffs' motion for reconsideration. (Doc. No. 61-1.) Plaintiffs argue that they are likely to succeed on their pending motion for reconsideration and that they are only permitted to file one motion for class certification, such that they would suffer irreparable harm if they move for class certification prior to the completion of the additional time for expert analysis they seek in their pending motions. (*Id.* at 2, 4–5.) Plaintiffs contend that the additional discovery they sought in their motion to compel is critical to supporting their class certification motion "with classwide evidence of the only truly contemporaneous timekeeping data (time stamps) that exists in this case." (*Id.* at 5.) Plaintiffs argue that denying a stay would "force [plaintiffs] to abandon class-wide theories of liability that would have otherwise been supported by data that Defendants have otherwise obfuscated and withheld." (*Id.*)

On April 26, 2021, defendants filed their opposition to plaintiffs' motion to stay, contending that the court should apply the standards applicable to writs of mandate because the stay requested by plaintiffs would give them the same relief that the magistrate judge already

1 | denied. (Doc. No. 64 at 4.) Defendants argue that plaintiffs have not shown that they are likely
2 | to succeed on the merits of their motions for reconsideration because plaintiffs have not shown
3 | that the underlying rulings were clearly erroneous. (*Id.* at 4–10.) Defendants contend that, even
4 | if plaintiffs were to be granted additional discovery and time for expert analysis, plaintiffs will
5 | not be irreparably harmed by filing a class certification motion by the April 30, 2021 deadline
6 | because they could simply withdraw that motion and file a new motion after completing any
7 | additional expert analysis. (*Id.* at 10.) In contrast, defendants argue that they would be harmed
8 | because a stay would necessarily grant plaintiffs additional time to prepare the class certification
9 | motion even if the pending motions for reconsideration are subsequently denied. (*Id.*)

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) provides that non-dispositive pretrial matters may be referred to and decided by a magistrate judge, subject to review by the assigned district judge. Fed. R. Civ. P. 72(a); *see also* L.R. 303(c). The district judge shall modify or set aside any part of the magistrate judge's order which is "found to be clearly erroneous or contrary to law." L.R. 303(f); *see also* 28 U.S.C. § 636(b)(1)(A). Discovery motions are non-dispositive pretrial motions which come within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A). Thus, the orders of a magistrate judge addressing discovery motions are subject to the "clearly erroneous or contrary to law" standard of review. *Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325 (9th Cir. 1983). The magistrate judge's factual determinations made in that context are reviewed for clear error, while legal conclusions are reviewed to determine whether they are contrary to law. *United States v. McConney*, 728 F.2d 1195, 1200–01 (9th Cir. 1984), *overruled on other grounds by Estate of Merchant v. CIR*, 947 F.2d 1390 (9th Cir. 1991). "A magistrate judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of [the] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Martin v. Loadholt*, No. 1:10-cv-00156-LJO-MJS, 2014 WL 3563312, at *1 (E.D. Cal. July 18, 2014). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602,

623 (1993) (internal quotation marks omitted); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997).

**DISCUSSION**

**A. The Magistrate Judge's Orders Denying Plaintiffs' Motion to Modify the Scheduling Order are Neither Clearly Erroneous Nor Contrary to Law**

In both pending motions for reconsideration of the orders denying plaintiffs' motion to modify the scheduling order, plaintiffs argue that the magistrate judge applied an incorrect legal standard in requiring them to show "extraordinary good cause" rather than the "good cause" dictated by Rule 16(b)(4) of the Federal Rules of Civil Procedure. (Doc. Nos. 54 at 5; 60 at 3.) Plaintiffs contend that the magistrate judge's amended order, clarifying that plaintiffs had failed to show good cause to modify the scheduling order, was deficient and "did not change the decision previously reached by apply[ing] the heightened 'extraordinary good cause' standard which denied Plaintiffs' motion." (Doc. No. 60-1 at 3.) Plaintiffs' arguments in this regard are unpersuasive.

"A schedule may be modified only for good cause and with the judge's consent[.]" Fed. R. Civ. P. 16(b)(4); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (a scheduling order "can only be modified 'upon a showing of good cause.'"). To establish "good cause," the party seeking to modify a scheduling order must show that, even with the exercise of due diligence, it cannot meet the order's deadlines. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). When evaluating a party's diligence and good cause, the Ninth Circuit has determined that "the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end." *Id.* at 610. Diligence is determined by demonstrating that: (1) the moving party assisted the court in creating a workable scheduling order; (2) despite diligent efforts to comply, the deadlines of the scheduling order could not be met due to unforeseen developments; and (3) the moving party diligently sought modification "once it became apparent that she could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

/////

Here, the court finds that the magistrate judge correctly applied the "good cause" standard to plaintiffs' motion to modify the scheduling order. Plaintiffs based their arguments for reconsideration primarily on one line appearing in the magistrate judge's March 4, 2021 order denying the motion, which states: "The Court noted in its previous order that it will not again amend the case schedule absent a showing of extraordinary good cause (Doc. 43 at 11), and Plaintiffs have failed to make such a showing. *See* Fed. R. Civ. P. 16(b)(4)." (*See* Doc. Nos. 54 at 5; 60 at 3.) The magistrate judge clarified in the amended order issued March 19, 2021 that plaintiffs had failed to "make the good cause showing required by the Rule" and that the standard applied was indeed the "good cause" standard and not a higher standard. (Doc. No. 55 at 8, n.1.) Despite the use of the phrase "extraordinary good cause" in that one line, the March 4, 2021 order described the correct "good cause" standard applied to motions to modify a scheduling order, including the focus on that moving party's diligence. (Doc. No. 52 at 6–7.)

Although plaintiffs argue that the magistrate judge applied an "extraordinary good cause" standard, they provide no substantive analysis demonstrating that the higher standard was actually applied. Rather, they merely assert that their motion to again modify the scheduling order should have been granted if the "good cause" standard was applied. Plaintiffs argue that "new information and limitations in already produced information were first mentioned in late November and disclosed December 31, 2020," and confirmed "from depositions in February 2021." (Doc. No. 54-1 at 7.) Plaintiffs contend that this new information and limitations were sufficient to demonstrate that the deadline for conducting expert discovery could not be met, such that the good cause standard was met and that the denial of the motion must mean the magistrate judge applied a higher standard. (*Id.*) Plaintiffs are incorrect.

The magistrate judge's analysis correctly focused on whether plaintiffs had demonstrated due diligence, as plaintiffs recognize is required under the applicable good cause standard. *See Johnson*, 975 F.2d at 610 ("If that party was not diligent, the inquiry should end."). The magistrate judge also considered all of the relevant factors in concluding that plaintiffs had not been diligent. For example, in considering whether plaintiffs had assisted the court in creating a workable scheduling order, the magistrate judge noted that plaintiffs' first motion to modify the

9

scheduling order did not seek to extend the expert discovery, non-dispositive motion, and class certification motion deadlines even though that initial request was based on similar discovery issues with respect to defendants' databases. (Doc. No. 52 at 7.) It is not contrary to law for the magistrate judge to have determined that this factor weighed against plaintiffs. Similarly, in considering plaintiffs' efforts to comply with the scheduling order and unforeseen developments, the magistrate judge addressed the database issues that plaintiffs experienced, as well as defendants' proposed workarounds, and the fact that plaintiffs were aware of these issues for several months before seeking a second modification of the scheduling order. (*Id.* at 7–8.) In particular, the magistrate judge considered that plaintiffs had not taken advantage of defendants' offer to help run reports with the Famous payroll software and that plaintiffs were informed of defendants' own workarounds to run reports with the payroll data. The magistrate judge was also persuaded by defendants' contention that because plaintiffs had been aware for months of the limitations of the Famous and Pet Tiger databases and concluded that those limitations could not be characterized as unforeseeable developments. (*Id.*)

Finally, in considering whether plaintiffs were diligent in seeking a modification of the scheduling order, the magistrate judge found that plaintiffs had been aware of at least some of the issues with the databases by November 2020, and after initial correspondence in late December, plaintiffs did not follow up with defendants in an attempt to address those issue again for almost a month. (*Id.* at 4, 7, 8.) It is not contrary to law for the magistrate judge to have determined based on these findings that plaintiffs were not diligent in seeking a further modification of the scheduling order.

In short, plaintiffs merely disagree with the magistrate judge's ruling, but provide no persuasive analysis or argument in support of their position that the magistrate judge applied a higher "extraordinary good cause" standard in declining to modify the scheduling order a second time at their request. Although the Ninth Circuit has stated that good cause "is a non-rigorous standard that has been construed broadly," it did so in the context of a Rule 6(b) request for a one week extension of time to file an opposition to a summary judgment motion. *Ahanchian v. Xenon Pictures, Inc.,* 624 F.3d 1253, 1259 (9th Cir. 2010). A request to modify a scheduling order, such

as that at issue here, is subject to the good cause standard under Rule 16, which focuses on the parties' exercise of due diligence. *Johnson,* 975 F.2d at 609. Here, the magistrate judge's March 4, 2021 order applied the applicable good cause standard, considered each of the three factors when considering the plaintiffs' diligence under the good cause standard, and did not misapply relevant law or rules of procedure. *See Martin,* 2014 WL 3563312, at *1 ("A magistrate judge's decision is 'contrary to law' if it applies an incorrect legal standard, fails to consider an element of [the] applicable standard, or fails to apply or misapplies relevant statutes, case law, or rules of procedure.").

Because the undersigned concludes that the magistrate judge's orders denying plaintiffs' motion to modify the scheduling order were not clearly erroneous or contrary to law, plaintiffs' motion for reconsideration of those orders will be denied.

**B.    The March 5, 2021 Order Denying Plaintiffs' Motion to Compel is Neither Clearly Erroneous Nor Contrary to Law**

In the pending motion for reconsideration of the March 5, 2021 order denying plaintiffs' motion to compel, plaintiffs argue that: (1) the magistrate judge erred as a matter of law by failing to consider all the proportionality factors required by Rule 26(b)(1) in denying their motion to compel; (2) the factual finding that electronic timestamps in defendants' Pet Tiger database could only be produced through manual screenshots was clearly erroneous; (3) the factual finding that defendants produced the electronically stored information in the Pet Tiger database in the form in which it is ordinarily maintained was clearly erroneous; and (4) the factual finding that plaintiffs' request for a backup copy of the electronically stored information in the Famous database would be cumulative was clearly erroneous. The court will discuss each of these claims in turn below.

       1.     The March 5, 2021 Discovery Order Applied the Correct Legal Standard

Plaintiffs argue the magistrate judge erred as a matter of law in failing to consider four of the six proportionality factors set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure in determining whether the discovery sought was proportional. (Doc. No. 57-1 at 5.) In their opposition, defendants contend that plaintiffs' motion to compel was denied on the basis that the

sought-for production would be unduly burdensome and unreasonably cumulative under Rule 26(b)(2), not Rule 26(b)(1), and that the proper legal standard was applied by the magistrate judge. (Doc. No. 59 at 3–4.) Defendants' point is well taken in this regard.

Rule 26(b)(1) requires that a court consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit" when determining whether the discovery sought is proportional. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) provides that discovery otherwise permitted under the Rules may be limited if "electronically stored information . . . [is] not reasonably accessible because of undue burden or cost," or if "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(B), (b)(2)(C).

Here, the magistrate judge appears to have denied plaintiffs' motion to compel discovery on the ground that the discovery sought was "unreasonably cumulative or duplicative, obtainable from a less burdensome source, or the burden and expense outweighed the likely benefit" under Rule 26(b)(2). (Doc. Nos. 53 at 7–10; 59 at 4.) In analyzing plaintiffs' requests regarding the time stamp data in defendants' Pet Tiger database, the magistrate judge specifically found that "the burden and utility of the information outweighs the benefit of analyzing this information." (Doc. No. 53 at 9.) Although the order does not explicitly cite to Rule 26(b)(2), the reasoning expressed clearly falls under Rule 26(b)(2)(B), which permits the court to deny the production of electronically stored information where the information is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The magistrate judge also denied plaintiffs' requests regarding the Famous database "[b]ecause Defendants have already produced the Famous database to Plaintiffs, [such that] the request for a complete Famous backup copy would be unreasonably cumulative." (*Id.* at 10.) As to this point, the order explicitly cited Rule 26(b)(2)C) as providing the standard under which that particular motion to compel was denied. (*Id.*)

Plaintiffs are correct that the March 5, 2021 does not directly discuss several of the Rule 26(b)(1) factors. Nonetheless, the magistrate judge did not apply an incorrect legal standard in

12

denying plaintiffs' motion to compel; rather, the legal standard provided by Rule 26(b)(2) was correctly applied. (Doc. Nos. 53 at 7–10; 57-1 at 5–6.) Moreover, the magistrate judge correctly analyzed several of the proportionality factors in discussing plaintiffs' arguments regarding the importance of the requested discovery to prove their claims and plaintiffs' ability to access the requested data in other ways, including by running smaller reports. (Doc. No. 53 at 7–10.) However, even if as plaintiffs contend, analysis of all the proportionality factors could have supported a conclusion that plaintiffs' requests were within the scope of discovery under Rule 26(b)(1), the magistrate judge was entitled to apply the standards of Rule 26(b)(2), which explicitly carves out exceptions to Rule 26(b)(1), in determining whether such discovery should be permitted.

Because the magistrate judge applied the correct legal standard under Rule 26(b)(2), did not fail to consider any element of that standard, and did not misapply the relevant law, the magistrate judge's order of March 5, 2021 is not "contrary to law." Accordingly, plaintiffs' motion for consideration of that order will also be denied.

### 2. The Finding that Defendants' Pet Tiger Timestamp Metadata Is Not Reasonably Accessible Without Undue Burden Was Not Clearly Erroneous.

Plaintiffs argue that the magistrate judge's finding that the electronic timestamps in defendants' Pet Tiger database could only be produced through manual screenshots was clearly erroneous because there is a presumption that data in such computer systems are accessible in native format. (Doc. No. 57-1 at 7–8.) Plaintiffs assert that defendants' "claim that only screenshots can be used is spurious at best," that the timestamp data is presumed to be extractable from the database, and that screenshots from a database are not responsive to database production requests because it "is not producing the information in its native format." (*Id.* at 8) (citing *Barker v. Kapsch Trafficcom U.S.*, No. 1:19-cv-00987-TWP-MJD, 2019 WL 9801693, at *5 (S.D. Ind. Aug. 30, 2019); *Watkins v. Trans Union, LLC*, No. 2:14-cv-00135-WTL-MJD, 2018 WL 3008639, at *3 (S.D. Ind. June 15, 2018)).

In ruling on plaintiffs' motion to compel, the magistrate judge considered defendants' assertions in this regard as, supported by a declaration from defendants' Chief Financial Officer,

13

that the Pet Tiger database software cannot generate a report with the relevant timestamps, and that such information could only be obtained through manual screenshots that would take upwards of 22,000 hours of work to perform for all the relevant screenshots. (Doc. Nos. 50 at 28; 48 at ¶¶ 17, 18.) Plaintiffs attempted to but ultimately did not present sufficient convincing evidence to the magistrate judge showing that the timestamp data could be otherwise extracted from the Pet Tiger database in some other method that did not require manual screenshots. (*See* Doc. No. 50 at 28.) In moving for reconsideration, plaintiffs dispute the validity of defendant's assertions regarding their ability to generate a report with the relevant timestamps and have attached the declaration of their own expert witness, David Breshears, to support their contentions as to this issue. The information in Breshears' declaration was not provided to the magistrate judge in connection with plaintiffs' motion to compel. (*See* Doc. Nos. 57-2; 57-1 at 3, 8.) The undersigned notes that a district judge may not consider facts not before the magistrate judge in determining whether a factual finding in a non-dispositive pretrial order was made in clear error. *See Liberty Dialysis - Hawaii LLC v. Kaiser Found. Health Plan, Inc.,* No. 17-cv-00318-JMS-WRP, 2019 WL 4364383, at *4 (D. Haw. Sept. 12, 2019) (citing *United States ex rel. Liotine v. CDW Gov't, Inc.,* 2013 WL 1611427, at *1 (S.D. Ill. Apr. 15, 2013) ("If the district court allowed new evidence [on review of a magistrate judge's] non-dispositive order], it would essentially be conducting an impermissible *de novo* review of the order.")). As such, because plaintiffs did not present the information contained in the Second Declaration of David Breshears (Doc. No. 57-2) to the magistrate judge, the undersigned may not now consider that information.

Under the "significantly deferential" clearly erroneous standard, the magistrate judge's factual finding in this regard will not be overturned. *See Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) ("The reviewing court may not simply substitute its judgment for that of the deciding court."). To obtain such a result, plaintiffs were required to demonstrate based on the evidence before the magistrate judge the finding that production of the time stamp data could only be compiled through manual screenshots gathered through tens of thousands of hours of labor was clearly error. Plaintiffs have not done so here.

/////

14

### 3. The Finding that Defendants Produced the Pet Tiger Database in the Form in which It Is Ordinarily Maintained Was Not Clearly Erroneous.

Plaintiffs next argue that the magistrate judge erred in determining that Adobe PDF was the native format in which defendants' Pet Tiger database data is ordinarily maintained. (Doc. No. 57-1 at 8–9.) Plaintiffs contend that "PDFs are not an adequate substitute for ESI stored in databases" because it "strips material out of the data and removes connections between the data." (Doc. No. 57-1 at 9) (citing *Trujillo v. Chef's Warehouse W. Coast LLC*, No. 2:19-cv-083790-DSF-MAA, 2020 WL 7315346, at *28 (C.D. Cal. Oct. 19, 2020) (rejecting production of discovery in PDF format and "compelling Defendant to produce its responses . . . in an . . . electronic searchable database or native format")).

In moving for reconsideration, plaintiffs mischaracterize the magistrate judge's factual finding in this regard. Unlike the cases cited by plaintiffs, here, the magistrate judge did not find that defendants themselves produced the Pet Tiger database data in PDF format. Rather, the magistrate judge found that defendants provided plaintiffs with direct user-level access to the Pet Tiger database, that defendants do not themselves have the ability to generate Pet Tiger reports in relational data formats, and that, according to defendants, the Pet Tiger system does not have the software ability to generate reports in formats other than PDFs. (Doc. No. 53 at 3, 9.) The magistrate judge further found that defendants produced the information electronically stored in the Pet Tiger database in the form in which it is ordinarily maintained because defendants provided plaintiffs with direct access to the database itself. (Doc. No. 53 at 9.) Plaintiffs were given access to the Pet Tiger database—the same access that defendants themselves have. Essentially, plaintiffs object to the fact that the Pet Tiger software generates reports in Adobe PDF format. (Doc. No. 57-1 at 9.) The magistrate judge was presented with evidence that defendants provided plaintiffs with access to the Pet Tiger data in the same format that defendants had access, with the same ability to generate reports. (Doc. Nos. 50 at 4, 26–27; 53 at 3, 9; 64 at 9.) Plaintiffs contend that there must be some method that would make the data available to plaintiffs in formats where the operational functions among the data are not lost or degraded as they are with export to the static Adobe PDF formats.

15

The evidence before the magistrate judge supported the finding that the data was ordinarily maintained within the Pet Tiger database with all its report format limitations. (Doc. No. 57-1 at 9; Doc. No. 53 at 9.) Thus, the magistrate judge did not clearly err in finding that by providing plaintiffs with the direct access to the Pet Tiger database, defendants produced the electronically stored information in the form in which it is ordinarily maintained and with the same limitations on report generation as defendants experience.

4. <u>The Finding that a Backup Copy of Defendants' Famous Payroll Database Would Be Cumulative Was Not Clearly Erroneous</u>.

Plaintiffs also fail to cite to any facts establishing that the magistrate judge erred in finding that the production of a backup copy of defendants' Famous payroll database data would be cumulative.

Plaintiffs argue that production of a complete copy of the Famous database would not be cumulative because the initial production [of the Famous payroll database] was rendered highly difficult to analyze due to "timed-out connectivity, [which] prevent[ed] the query of the data from functioning, and did not allow preparation of reports needed for this class action was not readily usable." (Doc. No. 57-1 at 10.) Plaintiffs had previously emphasized the sheer volume of data prevented them from running reports for every crew of employees with for each week worked due to the overwhelming number of reports that would be necessary. (Doc. No. 51 at 3–4.) However, the magistrate judge took these facts into consideration and noted that defendants themselves also experienced such timing out connectivity issues when running large reports, that the issue seemed to be one with the Famous software itself, and that plaintiffs' counsel "identified how they were able to get around the issue and reported that they had been able to run reports for shorter time periods, including running a report for one year. . . [which is] the same solution utilized by Defendants." (Doc. No. 53 at 3, 9–10) (citing Doc. Nos. 50 at 27; 47 at ¶¶ 7, 9). Plaintiffs assert that the copy of the database would not merely be providing the same information in a different format because it would permit plaintiffs to readily query the data without the issues they had previously experienced. (Doc. No. 57-1 at 10.) However, plaintiffs provided no additional facts

suggesting why the solution they have identified themselves (running multiple reports in one year periods rather than the entire four year class period) is insufficient to permit analysis of the data. Nor have plaintiffs shown that the reporting issues would not reoccur with a complete copy of the database, given that the issues appear to stem from the Famous software and not from defendants. (*See* Doc. No. 53 at 3, 10; *see generally* Doc. Nos. 50, 57-1.) Plaintiffs have failed to show that the magistrate judge clearly erred in finding that the requested copy of the Famous payroll database would be needlessly cumulative and would provide the same information to which plaintiffs already had access.

Accordingly, plaintiffs' motion for reconsideration of the magistrate judge's order of March 5, 2021 denying their motion to compel will be denied.

**C.     The Motion to Stay**

Plaintiffs have also sought a stay of their April 30, 2021 deadline to file a motion for class certification based on the alleged irreparable harm they would suffer if they were required to file a class certification motion before the court ruled on their motions for reconsideration. (Doc. No. 61-1 at 2, 4–5.) Because the undersigned concludes that the magistrate judge's orders denying plaintiffs' motion to modify the scheduling order and motion to compel were not clearly erroneous or contrary to law, plaintiffs' motions for reconsideration are no longer pending. Accordingly, plaintiffs' April 21, 2021, motion for a temporary stay of the deadline to file their motion for class certification will also be denied.

**CONCLUSION**

Accordingly,

1. Plaintiffs' motion for reconsideration (Doc. No. 54) of the magistrate judge's March 4, 2021 order denying plaintiff's motion to modify the scheduling order is denied;

2. Plaintiffs' motion for reconsideration (Doc. No. 57) of the magistrate judge's March 5, 2021 order denying plaintiff's motion to compel is denied;

/////

/////

17

3. Plaintiffs' motion for reconsideration (Doc. No. 60) of the magistrate judge's March 19, 2021 amended order denying plaintiff's motion to modify schedule is denied; and

4. Plaintiffs' motion for a temporary stay (Doc. No. 61) is denied.

IT IS SO ORDERED.

Dated: **April 29, 2021**

_/s/ Dale A. Drozd_
UNITED STATES DISTRICT JUDGE