UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBASTIANA MARTINEZ-SANCHEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHONY VINEYARDS, et al.,<br><br>Defendants. | No. 1:19-cv-01404-ADA-CDB<br><br>ORDER DENYING DEFENDANTS' MOTION FOR DISQUALIFICATION<br><br>(ECF No. 112) |

**I.**

**Procedural Background**

On December 12, 2019, Plaintiffs filed their first amended complaint as a putative class action alleging various state and federal labor law violations. (ECF No. 6.) Plaintiffs filed a motion for class certification on April 30, 2021. (ECF No. 66.) On November 18, 2021, the assigned Magistrate Judge issued findings and recommendations that, among other conclusions, recommended certification of a monetary relief class defined as,

> All persons employed by Defendants as non-exempt fieldworkers in non-supervisory positions who performed agricultural work for Anthony Vineyards' agricultural operations within the State of California at any time between October 4, 2015 through the date of service of this order.

///

(ECF No. 86 at 49.) The Magistrate Judge also issued findings and recommendations on October 22, 2021 that recommend striking some, but not all, of Plaintiffs' PAGA claims. (ECF No. 90.) Plaintiffs and Defendants filed objections to the Magistrate Judge's conclusions on both motions. (ECF Nos. 95, 96, 97.) The findings and recommendations remain pending before the Court pursuant to 28 U.S.C. § 636(b)(1)(C). On August 24, 2022, Chief Judge Kimberly J. Mueller reassigned this matter from the docket of Judge Dale A. Drozd to the docket of the undersigned. (ECF No. 106.) On January 10, 2023, Defendants filed the instant motion to disqualify the Court. (ECF No. 112.) Plaintiffs filed an opposition on January 19, 2023, and Defendants replied on February 3, 2023. (ECF Nos. 113, 114.) The Court has determined that the matter is suitable for decision on the papers, pursuant to Local Rule 230(g).

## II.

## Defendants' Allegations of Partiality

Defendants' allegations fall largely into three categories: (1) the undersigned's prior participation on the Boards of Directors of California Rural Legal Assistance, Inc. ("CRLA") and Legal Aid at Work ("LAAW"); (2) certain public comments the undersigned has made regarding working conditions in California's Central Valley; and (3) the undersigned's legal advocacy for field workers before her appointment to the bench.

**A.     Participation on the board of CRLA and LAAW**

The undersigned served on the CRLA Board of Directors from roughly 2015 through 2018 and the LAAW Board of Directors from roughly 2014 through 2018. (Loeffel Decl. at ¶ 24, 29.) Defendants tie each of Plaintiffs' co-counsel either to CRLA or LAAW in a manner they contend exposes the Court's partiality in this matter.[1]

---

[1] Defendants contend that Dawson Morton, Plaintiffs' co-counsel, was the Litigation Director for California Rural Legal Assistance Foundation's ("CRLAF") Sacramento office between 2016 and 2019, arguing that his tenure overlapped with the undersigned's service on the CRLA Board of Directors. (Loeffel Decl. at ¶ 20.) While these assertions are both technically true, they are misleading. CRLAF is not the same organization as CRLA, and the Court has never served on CRLAF's Board of Directors. (*See* Declaration of Dawson Morton at ¶¶ 4–5, ECF No. 113-2 at 2–3.) While the Court must view objectively the facts that Defendants present in their moving papers and affidavit, it should not recuse itself "on unsupported, irrational, or highly tenuous speculation." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986). Defendants' confusion is understandable given the close similarity between the organizations' names, and the Court has an obligation to place the facts that Defendants present in the proper context. *See United States v. Azhocar*, 581 F.2d 735, 739 (9th Cir. 1978) ("[I]nquiry into the circumstances surrounding the presumptively true allegations is often appropriate in determining whether they are such as would prevent a fair

First, Defendants allege that Santos Gomez served as Directing Attorney of CRLA's Oxnard office between 1998 and 2006. (*Id.* at ¶ 17.) After leaving CRLA, Mr. Gomez continued to donate to the organization – in fact, in 2015, CRLA labeled him its "single largest donor" – and has worked closely with CRLA on cases as co-counsel.[2] (*Id.* at ¶ 18.) In 2015, CRLA also recognized Mr. Gomez for his nomination of the organization for cy pres awards. (*Id.*) Additionally, Defendants note that Marco Palau, Joseph Sutton, and Eric Trabucco all, at one point, worked for the law firm of Mallison & Martinez in Oakland, which was a CRLA donor in 2016 and 2017. (*Id.* at ¶ 22.) Additionally, Mr. Palau worked as a staff attorney for CRLA between 2006 and 2008.[3] (*Id.* at ¶ 23.) Finally, Defendants note that Mr. Trabucco worked as a law clerk in LAAW's wage and hour Enforcement Litigation Program between January 2013 and 2014. (*Id.* at ¶ 21.) Mr. Gomez, Mr. Morton, Mr. Palau, and Mr. Trabucco have each submitted declarations attesting to the fact that none of them have any personal or professional relationship with the undersigned. (Gomez Decl. at ¶ 6; Morton Decl. at ¶ 6; Palau Decl. at ¶ 7; Trabucco Decl. at ¶ 11.) Defendants do not challenge these assertions.

**B.    Prior Comments**

Defendants quote the Court from CRLA's 2015 annual report:

> CRLA's client community is very personal to me because the Central Valley is my home. I have worked in the fields and I understand what it means to be harassed.
>
> . . .
>
> Without CRLA, justice would be inaccessible to so many in my community. I grew up watching people I cared about work hard only to have their rights violated, and then find themselves helpless to fight back.

(Loeffel Decl. at ¶ 26.) Defendants also quote from a prepared statement the undersigned provided to the Hearing on Civil Rights in California's Central Valley on April 20, 2018, in which the undersigned stated that "workplace violations are common in seasonal workplaces which are all

---

decision on the merits.").

[2] Mr. Gomez disputes the assertion that he has worked with CRLA as co-counsel on cases, stating that he "occasionally speak[s] with its staff about legal issues." (Gomez Decl. at ¶ 4, ECF No. 113-1 at 2.)

[3] Mr. Palau asserts that the period of his employment at CRLA was from 2005 to 2007. (Palau Decl. at ¶ 3, ECF No. 113-3 at 2.)

3

prevalent in the Central Valley," and that "there are insufficient private attorneys in these rural communities to fill the gap left by the inadequate number of legal aid attorneys able to help these imperiled workers." (*Id.* at ¶ 28.) Additionally, Defendants point out that CRLA listed the undersigned as a donor in both 2016 and 2017. (Loeffel Decl. at ¶ 27.)

**C.    Prior advocacy**

Defendants point to the fact that CRLA's 2015 annual report favorably compares the undersigned to Cesar Chavez and Dolores Huerta, co-founders of the United Farmworkers' Union and members of the first CRLA Board of Directors. (*Id.* at ¶ 25.) This comparison apparently derives from the undersigned's work as an employment attorney prior to taking the bench. Defendants note that the undersigned, in collaboration with LAAW, helped found a Workers' Rights clinic, which was "tasked with helping explain employment rights to low wage workers." (*Id.* at ¶ 30.) Additionally, Defendants point out that the Court represented plaintiffs in a putative class action filed under the name *Jimenez Perea v. Dooley*, alleging that "the State of California discriminated against Medi-Cal participants as the program became majority Latino." (*Id.* at ¶ 32.) Defendants claim that "many of Sycamore's employees since 2017 would have also been Medi-Cal participants in 2017," and that, therefore, the putative class in that case would overlap with the putative class in the instant matter. (*Id.* at ¶¶ 33–34.)

## III.

## Legal Standard

Under 28 U.S.C. §§ 144 and 455, a judge must recuse herself if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983); *see also United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (holding that the substantive standards under § 144 and § 455 are identical). When making a motion for recusal, the movant must include an affidavit stating "the facts and the reasons for the belief that bias or prejudice exists." 28 U.S.C. § 144. The judge who is the subject of the motion should be the one to rule on the sufficiency of the accompanying affidavit but may not adjudicate "the truth or falsity of the facts alleged." *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978). In the absence of a "legitimate reason to

recuse," judges have an obligation to participate in the cases set before them. *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008). Therefore, a movant's burden to demonstrate a legitimate reason for recusal is substantial. *United States v. Zagari*, 419 F. Supp. 494, 501 (N.D. Cal. 1976).

**IV.**

**Discussion**

**A.     Defendants' motion is timely.**

Plaintiffs assert that the Court should deny Defendants' motion as untimely. (ECF No. 113 at 2–3.) While no statute sets a fixed time by which a party must file a recusal motion, "[i]t is well established in this circuit that a recusal motion must be made in a timely fashion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992). "[A] party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention." *United States v. Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997). While the undersigned agrees that the timing of Defendants' motion is delayed – Defense counsel first conferred with Plaintiffs' counsel about the issue of disqualification on September 20, 2022, less than a month after this case was reassigned and slightly less than four months before they filed their motion, (Morton Decl. at ¶ 8, ECF No. 113-2 at 3) – denial on the grounds of timeliness would be inappropriate in this case.

The principal reason for the timeliness requirement is to prevent gamesmanship and attempts to shop for a more favorable judicial forum following an adverse ruling. *See E. & J. Gallo Winery*, 967 F.2d at 1295. All of the Ninth Circuit cases Plaintiffs cite reflect this concern. *See id.* (raising disqualification for the first time in a motion for a new trial); *Rogers*, 119 F.3d 1377 (raising disqualification for the first time on a motion for resentencing); *United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1198, 1205 (E.D. Cal. 2010) (raising disqualification two weeks after judge denied discovery motion); *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018) (raising disqualification only after receiving jury verdicts in criminal trial); *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 871–72 (9th Cir. 1991) (raising disqualification one month after judge issued summary judgment order); *Cal. Chamber of Com. v. Becerra*, No. 2:19-cv-02019-KJM-JDP,

2021 WL 4356038, at *1 (E.D. Cal. Sep. 24, 2021) (raising disqualification "on the tail" of several adverse rulings).

Defendants' affidavits and arguments are deficient for other reasons, but it is clear they do not follow any adverse ruling from this Court. The Court will, therefore, not deny Defendants' motion as untimely.

**B.      Defendants' motion and affidavit lack merit.**

Defendants' first ground for disqualification is the undersigned's former service on the Boards of Directors of two organizations with which some of the Plaintiffs' attorneys have current and former ties. The connections Defendants draw are strained. The undersigned last served on these boards nearly five years ago. The only attorney who worked at either CRLA or LAAW during the undersigned's tenure was Mr. Trabucco, who was an unpaid intern[4] at LAAW during the year following his graduation from law school. (Trabucco Decl. at ¶ 5, ECF No. 113-4 at 2.) Defendants point out that Mr. Santos donated to CRLA while the undersigned served on that organization's board, as did the firm where Mr. Palau, Mr. Trabucco, and Mr. Sutton previously worked. However, such a tenuous connection does not intimate any impropriety or bias upon the undersigned. First, a prior close association with an organization does not necessarily provide grounds for recusal, even when that association is a party to the present litigation – something that is not even the case here. *See, e.g.*, *Lunde v. Helms*, 29 F.3d 367, 370–71 (8th Cir. 1994) (holding recusal not necessary where judge was a graduate of, and continued to donate to, the defendant university); *Easley v. Univ. of Mich. Bd. of Regents*, 906 F.2d 1143, 1145–47 (6th Cir. 1990) (holding recusal not necessary where judge graduated from defendant law school and likely had "amicable feelings . . . for his alma mater"). Second, Defendants correctly make no allegations that the undersigned personally solicited these donations or received any compensation in return for them. Moreover, as Plaintiffs' declarations make clear, the undersigned has never even met any of the attorneys representing Plaintiffs. *United States v. Hubbard*, No. 12-01133 LEK-01, 2022 WL 281548, at *3 (D. Haw. Jan. 31, 2022) ("The more insignificant the relationship and the greater the

---

[4] Mr. Trabucco states that he was not on LAAW's payroll during this time but did receive funding from his law school. (Trabucco Decl. at ¶ 5, ECF No. 113-4 at 2.)

1   temporal distance between contacts, the less likely it is a judge's impartiality can reasonably be
2   questioned."). Even if Plaintiffs' attorneys had been former partners at the firm where the
3   undersigned previously worked, recusal would not be required so long as their representation in the
4   present matter did not date back to the undersigned's time there. *Cf.* 28 U.S.C. § 455(b)(2); *see*
5   *also Singer v. Wadman*, 745 F.2d 606, 608 (10th Cir. 1984). The connection here is far more
6   unsubstantiated. Defendants may as well have requested recusal because Mr. Trabucco and the
7   Court both attended Berkeley Law and likely have a shared affinity for Golden Bears athletics. *Cf.*
8   *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 81 (D.D.C. 2011) ("[A] shared
9   interest in glass art alone does not suggest partiality . . . .").

10  Defendants appear to concede that the undersigned's shared connections to CRLA and
11  LAAW alone are insufficient to demonstrate bias. (ECF No. 114 at 3.) What tips the scales, they
12  emphasize, are public comments that the undersigned has made regarding workers' rights while
13  practicing as a private attorney. (*See* ECF No. 114 at 3.) Defendants frame some of these comments
14  – about the prevalence of labor law violations and lack of enforcement in California's Central
15  Valley – as opinion, when in fact, the undersigned was citing to *A Report of The California*
16  *Commission on Access to Justice – Improving Civil Justice in Rural California*. (*See* ECF No. 112-
17  3 at 264–65 n.9, 10.) Even if the undersigned were expressing an opinion, however, Defendants
18  would still fail to provide sufficient grounds for recusal. *United States v. Montecalvo*, 545 F.2d
19  684, 685 (9th Cir. 1976) is instructive. There, a criminal defendant accused of bank robbery sought
20  recusal from the trial judge because of the judge's statement that "he wanted to notify the press that
21  he wanted no more bank robbers released in Tacoma, Washington." *Id.* The Court of Appeals held
22  that such a comment did not provide evidence of bias because "the judge was expressing his
23  annoyance with the Parole Board policy, not expressing any opinion about any particular parolee,
24  or about any person who, like Montecalvo, was accused of bank robbery." *Id.*; *see also United*
25  *States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996) (recusal not necessary in prosecution for
26  marijuana distribution and possession where sitting judge told reporter that "marijuana distribution
27  is a serious and pervasive social problem"). Similarly, the undersigned's comments at a public
28  hearing nearly five years ago did not address any particular organization or individual. The same

7

logic applies to comments that Defendants pulled from a profile CRLA did about the undersigned's personal history witnessing and experiencing labor law violations in her youth. These comments simply have no bearing on the undersigned's ability to be impartial in this case and the undersigned does not believe any reasonable person would think otherwise.[5] To the extent that Defendants construe the undersigned's prior donations to CRLA – an organization that is not even a party to this litigation – as an assertion about factual or legal issues in this case, such conduct "does not raise an improper inference." *See United States v. De Castro-Font*, 587 F. Supp. 2d 353, 360 (D.P.R. 2008).

Finally, Defendants argue that the Court should recuse itself because it previously represented a class of Medi-Cal recipients, many of whom are likely members of the putative class in this case. They offer no facts about any actual overlap between the classes, but instead engage in the type of speculation that courts have long held insufficient to trigger recusal. *See Clemens v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). Nor do they allege that the Court ever met any of the unnamed class members in the Medi-Cal case, much less personally provided them legal advice. Even if the Court had previously provided direct representation to a named party in this case, "a judge's prior representation of a witness or a party in an unrelated matter does not automatically require disqualification." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1351 (10th Cir. 1996); *see also* 28 U.S.C. 455(b)(2). To the extent that Defendants generally construe the Court's previous representation of field workers as a basis for disqualification, their argument lacks merit. "The fact that a judge actively advocated a legal, constitutional, or political policy or opinion before being a judge is not a bar to adjudicating a case that implicates that opinion or policy." *Wessemann ex rel. Wessmann v. Boston Sch. Comm.*, 979 F. Supp. 915, 917 (D. Mass. 1997) (citing *Laird v. Tatum*, 409 U.S. 824, 830 (1972)). Requiring recusal based on a judge's prior employment would be untenable – at its logical extreme, it would prevent former United States Attorneys and Federal

---

[5] California has a robust and complex scheme of labor laws. *See generally* Cal. Labor Code § 1 et seq. To the extent that the undersigned's comments expressed concerns that violations of these laws are contrary to the public interest, it echoed the law itself. *See United States v. Conforte*, 624 F.2d 869, 882 (9th Cir. 1980) ("A judge's views on legal issues may not serve as the basis for motions to disqualify."). "Nor is there, to [the Court's] knowledge, a legitimate [pro-wage theft] constituency in the public." *United States v. Corbin*, 827 F. Supp. 2d 26, 31 (D. Me. 2011).

Public Defenders from hearing any criminal matters on their dockets.

## V.

## Conclusion

In sum, none of Defendants' arguments, standing alone or taken together, suggest the existence of bias warranting the undersigned's recusal in this matter. Defendants' objections simply amount to a discomfort with the undersigned's lived and professional experience. Courts, however, have long recognized that judges "are not sterile creatures who don judicial robes without any prior contacts in the community but rather are very likely to be men and women with a broad exposure to all kinds of citizens of all shades of persuasion and background." *Matter of Searches Conducted on March 5, 1980*, 497 F. Supp. 1283, 1290 n.1 (E.D. Wis. 1980); *see also Blank v. Sullivan & Cromwell*, 418 F. Supp. 1, 4 (S.D.N.Y. 1975) ("Indeed, if background or sex or race of each judge were, by definition, sufficient grounds for removal, no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a sex, often with distinguished law firm or public service backgrounds."). Bringing diverse experiences and perspectives to the federal bench is a boon, not a detriment, to the cause of equal justice under the law. *See Sec. & Exch. Comm'n*, No. 3:18-CV-252-CWR-FKB, 2018 WL 2465763, at *3 (S.D. Miss. Jun. 1, 2018) ("Justice is a search for truth. That search will fail if a court does not incorporate a wide array of experiences, facts, and perspectives into its decision-making processes."). To hold otherwise would make social, cultural, and political ignorance a prerequisite for judicial impartiality and elevate naivete over knowledge.

**[REMAINING PAGE LEFT INTENTIONALLY BLANK]**

1 | Accordingly, Defendants' motion for disqualification, (ECF No. 112), is denied.

4 | IT IS SO ORDERED.

5 | Dated:   February 21, 2023

_____
UNITED STATES DISTRICT JUDGE